## DEPARTMENT OF TRANSPORTATION *v.* JOSEPH PACITTI ET AL.
## (14471)

Dupont, C. J., and Foti and Spear, Js.

Argued March 22—officially released September 10, 1996

---

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (plaintiff).

*Patrick J. Fitzgerald,* with whom, on the brief, was *William C. Longa,* for the appellee (named defendant).

*Stuart D. Rosen,* with whom, on the brief, were *Ann M. Siczewicz* and *Patrick E. Gonya, Jr.,* for the appellee (defendant Taco Bell Corporation).

FOTI, J. The plaintiff[1] appeals from the judgment rendered denying its application for temporary and permanent injunctions[2] against the defendants Joseph Pacitti and Taco Bell Corporation (Taco Bell). The plaintiff claims that the trial court improperly (1) denied its request for the issuance of an injunction and (2) refused to admit certain evidence. We affirm the judgment of the trial court.

The underlying facts as found by the trial court are not substantially in dispute. Pacitti is the owner of a development called the Vernon Park Plaza in Vernon; Taco Bell operates a restaurant in the development.

[1] The state traffic commission of the department of transportation instituted this action; the plaintiff will be referred to as the traffic commission.

[2] The parties agreed to consolidate the hearings on the claims for temporary and permanent injunctive relief.

The original plan by Pacitti was to construct a 120,000 square foot retail shopping center providing 427 parking spaces. The proposed development would have included a large supermarket and was expected to generate up to 1289 car trips either entering or leaving the plaza during each of the peak hours of operation.

General Statutes § 14-311 (a) provides in relevant part: "No person . . . shall build, expand, establish or operate any . . . development generating large volumes of traffic . . . until such person or agency has procured from the State Traffic Commission a certificate that the operation [of the development] will not imperil the safety of the public." Section 14-312-1 (a) of the Regulations of Connecticut State Agencies provides that a development "providing two-hundred or more parking spaces, or a gross floor area of 100,000 square feet or more" generates large volumes of traffic.

Since the proposed development would have generated large volumes of traffic, according to these definitions, on July 23, 1989, Pacitti applied to the traffic commission for a certificate of operation. The traffic commission referred the application to the bureau of engineering and highway operation of the department of transportation bureau, which conducted a traffic study of the proposed development to determine its impact on the flow of traffic. An engineer for the bureau prepared a report that recommended that the proposed development be permitted to operate if eleven conditions concerning roadway improvements were met. The police chief of the town of Vernon concurred with the bureau's recommendation, which concurrence was noted on the report. The report was based on the design, size, and expected traffic generation of the development as proposed.

On September 19, 1989, certificate no. 973 was issued to Pacitti and on September 25, 1989, he was so notified

by the executive director of the traffic commission. The certificate provided among other things that no person would operate the development or any portion thereof prior to the completion of all the conditions unless permission had been requested and received from the traffic commission.

At some point in the fall of 1990, Taco Bell began constructing its restaurant, and on November 14, 1990, the bureau informed the executive director of the traffic commission that Taco Bell should not be issued a certificate of occupancy unless all eleven conditions in the original certificate were completed or the traffic commission granted a revised partial opening.

Pacitti's application for a certificate of operation listed James Bubaris, P.E., as an authorized representative "to be contacted during review of application."

On November 21, 1990, Bubaris contacted the traffic commission requesting that Taco Bell be allowed to open without complying with the conditions set forth in the original certificate of operation. Bubaris had conducted a study and concluded that the existing geometry and phasing of the intersection was sufficient for the operation of Taco Bell, Shawmut Bank[3] and a proposed department of motor vehicles facility located across the street from the development. In the letter, a commitment was made to do certain roadwork in front of Taco Bell in the spring of 1991 if the traffic commission would permit Taco Bell to open in December.

The bureau thereupon recommended to the traffic commission that Taco Bell be permitted to operate pursuant to an amended certificate and without full compliance with the requirements of the original certificate if two conditions were met. The conditions were that a

[3] The Shawmut Bank, a former defendant, has ceased to operate its facility in the development; it does, however, retain its leasehold interest, which includes an access drive in the development.

traffic sign be installed and that no more than 12,200 square feet of building space be occupied until all of the conditions of the original certificate had been met. The Vernon police chief again concurred with the bureau recommendation.

On December 18, 1990, the traffic commission adopted the bureau recommendation and approved an amended certificate that permitted the opening of Taco Bell. Pacitti was notified on the same day. Pacitti complied with the conditions set forth in the amended certificate but the roadwork referred to in the Bubaris letter was never done. The development continues to consist solely of Taco Bell and a vacant Shawmut Bank because the inland wetlands commission of the town of Vernon refused to issue the permits necessary for an expansion of the development. Apart from the two uses mentioned, no other uses are made of the rest of the property.

On December 18, 1992, the director of the traffic commission wrote Pacitti to inform him that the traffic commission had voted to order him to cease and desist operating those portions of the development that were then doing business in violation of the original certificate. The traffic commission did not send a copy of the order to Taco Bell headquarters in California but rather sent a copy to James Santos, the Taco Bell employee responsible for obtaining the necessary permits for the certificate of occupancy. Santos denied having received a copy of the order and Taco Bell did not have a copy of the order in its files at corporate headquarters in California. Santos was the construction manager for Taco Bell in December, 1990, but had no responsibility for its operation in 1992. Santos testified that he was aware that the certificate of occupancy was in jeopardy in November, 1990, and he did receive a copy of the Bubaris letter to the traffic commission. Santos reported none of this to his superiors because he was assured by Pacitti that the work necessary to comply

with the original certificate would be done. Subsequent to the issuance of the certificate, Santos became aware of the fact that the work that was supposed to be done in the spring of 1991 had not been done.

The traffic commission sought, in addition to a temporary and permanent injunction restraining Pacitti from operating Vernon Park Plaza, the penalties as provided by General Statutes § 14-314,[4] and such other relief as the court deemed just and proper.

I

Following a hearing, the trial court, in exercising its discretion, declined to issue an injunction, concluding that sufficient evidence had not been presented to demonstrate that compliance with the conditions of the original certificate would correct any traffic problems that might exist.

The decision to grant or deny an injunction is discretionary and will not be reversed absent a clear abuse of discretion. *Crabtree* v. *Coyle*, 19 Conn. App. 208, 211, 561 A.2d 455 (1989). In deciding, the trial court must consider the equities, including the gravity and wilfulness of the violation, as well as the potential harm. *Gelinas* v. *West Hartford*, 225 Conn. 575, 595–96, 626 A.2d 259 (1993); *Berin* v. *Olson*, 183 Conn. 337, 343, 439

---

[4] General Statutes § 14-314 provides: "Any person, firm or corporation failing to comply with any order made pursuant to any provision of this chapter shall be fined not more than five thousand dollars or imprisoned not more than thirty days or both, and shall be subject to the provisions of section 14-111. Any person, firm or corporation failing to comply with any traffic control signal, sign, marking or other device placed and maintained upon the highway, or with any regulation adopted pursuant to any provision of this chapter, by the State Traffic Commission or the traffic authority of any city, town or borough shall be deemed to have committed an infraction, if no other penalty is provided by law. Traveling at a greater rate of speed than is reasonable as provided in section 14-218a shall not be deemed to be a failure to comply with the provisions of this section but shall be deemed to be the commission of an infraction within the provisions of said section 14-218a."

A.2d 357 (1981). Irreparable harm need not be shown in a statutory injunction case. *Conservation Commission* v. *Price*, 193 Conn. 414, 429, 479 A.2d 187 (1984). " '[T]he enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted.' " Id. Proof of a violation, however, does not deprive the court of discretion and does not obligate the court automatically to grant every injunction sought for every violation. *Gelinas* v. *West Hartford*, supra, 588.

Our review of the record discloses that the trial court did not require the traffic commission to prove irreparable harm or that there was no adequate remedy at law. The trial court applied a correct legal standard and stated: "The burden placed on the plaintiff here is no greater than the one the plaintiff itself ascertained that it had to assume (1) in its complaint by alleging a threat to traffic safety, (2) in its repeated efforts at trial to have evidence of traffic safety presented to the court, and (3) by its posttrial motion to have the court reconsider an evidentiary ruling which prevented this evidence coming in at trial. In fact, the equitable balancing of interest referred to in these statutory injunction cases would, in the court's opinion, place a relatively light burden on the state agency. It might be little more than a burden of presenting some evidence rather than an obligation to prevail on the equities by a preponderance of the evidence. It is not for the courts to second guess agencies on the danger to the public interest or welfare or to second guess the legislature about the relative importance of such a danger vis-a-vis the burden of harm inflicted on a citizen once the legislature has provided for a statutory injunction. But the courts—at least unless explicitly so instructed by the legislature and leaving aside any due process concerns raised by that observation—cannot be required to issue injunctive

relief against people without some showing of the existence of the danger or problem the statutory scheme sought to avert at least where the party opposing the injunction has shown such relief would harm its interests."

The trial court concluded that no evidence had been presented to support the allegations in the complaint or to show a threat to traffic safety, nor was there any evidence that compliance with the conditions of the original certificate would correct any traffic problems that might exist. The court also observed that, if the injunction were granted, Taco Bell would be closed and its two dozen workers would be laid off. The court recognized that, if a traffic problem did exist, there was no evidence that the defendants were the cause of the problem. The trial court, in weighing the equities, did not abuse its discretion in denying injunctive relief.[5]

## II

The traffic commission next asserts that the trial court improperly refused to admit the records of the department of transportation. The traffic commission has failed to comply with Practice Book § 4065 (d) (3).[6] Because the traffic commission has failed to provide us with an adequate basis on which to consider the nature or merits of its claim, we decline to review it. *Bank of Boston Connecticut* v. *Ciarleglio*, 26 Conn. App. 503, 506, 604 A.2d 359 (1992).

## III

The traffic commission also claims that the trial court improperly denied its application for an injunction

[5] The plaintiff also argues that the trial court improperly ruled that the defendants had no right to appeal the cease and desist order pursuant to General Statutes § 14-311 (e); we find no merit to this claim.

[6] Practice Book § 4065 (d) (3) provides in pertinent part: "When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include, where appropriate . . . the question or offer of exhibit; the

under General Statutes § 14-311 (b).[7] Our review of the record discloses that the trial court heard evidence that the regulatory criteria, i.e., 200 or more parking spaces, or a gross floor area of 100,000 square feet or more, was not met in the development. The trial court, however, did not rule on this question, but, rather, denied the traffic commission's application for injunctive relief after balancing the equities. Nor did the trial court rule as to whether the traffic commission had authority under § 14-311 to issue the cease and desist order.

Further, there is no dispute that the original certificate was amended and that the amended certificate allowed Taco Bell's occupancy on two conditions, both of which were complied with at all relevant times. The traffic commission approved the amended certificate, which permitted the opening of Taco Bell. At no time was Taco Bell operating in violation of the amended certificate.

The judgment is affirmed.

In this opinion the other judges concurred.

---

objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. . . ."

[7] General Statutes § 14-311 (b) provides: "No local building official shall issue a building or foundation permit to any person, firm, corporation, state agency or municipal agency to build, expand, establish or operate such a development until the person, firm, corporation or agency provides to such official a copy of the certificate issued under this section by the commission. If the commission determines that any person, firm, corporation, or state or municipal agency has (1) started building, expanding, establishing or operating such a development without first obtaining a certificate from the commission or (2) has failed to comply with the conditions of such a certificate, it shall order the person, firm, corporation or agency to (A) cease constructing, expanding, establishing or operating the development or (B) comply with the conditions of the certificate within a reasonable period of time. If such person, firm, corporation or agency fails to (i) cease such work or (ii) comply with an order of the commission within such time as specified by the commission, the commission may make an application to the superior court for the judicial district of Hartford-New Britain or the judicial district where the development is located enjoining the construction, expansion, establishment or operation of such development."