# KOVACS CONSTRUCTION CORPORATION *v.* WATER POLLUTION AND CONTROL AUTHORITY OF THE CITY OF NEW HAVEN
## (AC 30143)

Flynn, C. J., and Harper and Alvord, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 19—officially released April 27, 2010

*David E. Rosengren*, with whom, on the brief, was *Daniel J. Klau*, for the appellant-appellee (defendant).

*Steven B. Kaplan*, for the appellee-appellant (plaintiff).

*Opinion*

ALVORD, J. The defendant, the water pollution and control authority of the city of New Haven, appeals from the judgment, rendered after a court trial, in favor of the plaintiff, Kovacs Construction Corporation. On appeal, the defendant claims that the court improperly awarded the plaintiff a portion of its claimed damages

because the court failed to state, and the evidence failed to demonstrate, that the defendant had breached its contractual obligations. The plaintiff cross appeals from the judgment, claiming that the court improperly failed to award the plaintiff (1) the liquidated damages withheld by the defendant, (2) additional costs it incurred for site dewatering and other work it performed after December 2, 2004, and (3) prejudgment interest pursuant to General Statutes § 37-3a. We affirm the judgment of the trial court in part and reverse it in part.

The following facts were found by the court or are not disputed. In August, 2003, the parties entered into a construction contract in which the plaintiff agreed to renovate and upgrade two existing sewer pump stations located at Barnes Avenue and Quinnipiac Avenue in New Haven and to install related sewer piping and manholes at each site. Although the bid specifications for the project specifically required that all dewatering activities were to be performed from *inside* the excavations at both sites, the plaintiff bid the job on the assumption that the defendant ultimately would permit it to site dewater from *outside* of the excavation areas.[1] On the basis of this assumption, the plaintiff was able to reduce its total bid price significantly.

Following the competitive bidding process, the plaintiff was awarded the contract as the lowest qualified bidder. The bid signed by the plaintiff and the contract documents all compelled the plaintiff to adhere to the "excavation dewatering" requirement. The parties' contract further provided that the plaintiff would not be entitled to extensions of time to complete the work or

---

[1] Dewatering is the process by which the level of groundwater at a particular site is lowered to prevent interference with the work at that site. In the present case, the work consisted of excavating portions of the site for the installation of sewer pipes, manholes and wet wells.

Dewatering from *inside* the excavation is known as *excavation dewatering*; dewatering from *outside* the excavation is known as *site dewatering*.

to compensation for any change in work or extra costs unless certain requirements were met and certain procedures were followed. Two months after the contract was executed, Richard T. Kovacs, the plaintiff's chief executive officer, contacted one of the project engineers at Metcalf & Eddy, Inc. (M & E),[2] and informed him that the plaintiff wanted to deviate from the contract by site dewatering the project.[3] A few days later, at the first job meeting on October 8, 2003, the plaintiff agreed to excavation dewatering at both sites as required by the contract.

The Barnes Avenue site is the site at issue in these appeals. Construction at that site began in early 2004 and continued through the spring of that year. Throughout that time period, the plaintiff dewatered the area around the pump station from inside the excavation. Beginning in May, 2004, however, the plaintiff commenced the next phase, which was the installation of the yard piping within the trench area. At that point, by letter dated May 4, 2004, the plaintiff renewed its request to deviate from the contract's excavation dewatering requirement. M & E immediately responded that site dewatering was not allowed by the contract. Nevertheless, a few weeks later, the plaintiff sent M & E a letter from Clarence Welti, the plaintiff's geotechnical engineer, in which he outlined a potential method of site dewatering. At a progress meeting held May 25, 2004, the parties discussed Welti's recommendations for site dewatering. By correspondence dated June 3, 2004, M & E advised the plaintiff that a request for a change order to deviate from the contract's excavation dewatering specifications had to be predicated on the

[2] Metcalf & Eddy, Inc., a geotechnical engineering firm that prepared the contract documents, was the defendant's consulting engineer for the project.

[3] That request was rejected outright for the Quinnipiac Avenue site. With respect to the Barnes Avenue site, the plaintiff was told that it would have to submit a site dewatering plan that addressed four specific concerns raised by M & E in a letter dated October 6, 2003.

discovery of a physical condition at the site that was materially different from the conditions indicated in the contract. Nevertheless, M & E indicated that it would consider granting the request if the plaintiff complied with the four conditions identified in the letter from M & E dated October 6, 2003.[4]

On July 6, 2004, the plaintiff sent a letter to M & E in which it claimed, for the first time, that it had encountered site conditions that were materially different from those represented in the contract documents. Although the plaintiff indicated in that letter that it wanted to implement site dewatering, it did not provide M & E with a proposed method or plan for the proposed site dewatering, nor did it address how it would satisfy the four conditions set forth in the October 6, 2003 letter. On July 22, 2004, the plaintiff submitted a letter to the defendant entitled "Claim and Protest Notification," in which it indicated that it (1) would continue to work at the Barnes Avenue site "under protest" in accordance with the excavation dewatering requirement of the contract, (2) would file a claim for all additional costs incurred in connection with excavation dewatering and (3) would not accept responsibility for any damage caused by undermining or settlement of existing utilities resulting from the excavation dewatering method.

On November 29, 2004, however, the plaintiff unilaterally decided that the contract's excavation dewatering method was " 'unsafe and commercially impracticable' " and ordered and installed a site dewatering system without the defendant's authorization. Beginning December 2, 2004, the plaintiff proceeded to dewater the entire yard piping site from outside the excavation.

As a result of the many difficulties with the project at both sites, some of which were unforeseen, the contract

---

[4] At trial, Welti testified that all four conditions that M & E requested to be included with the proposed alternative dewatering plan were reasonable.

price was increased and the completion date extended on several occasions by approved change orders. A number of the plaintiff's requests for additional compensation, however, were denied, and the defendant did not grant all of the extensions of time requested for the delays in completing the project. The plaintiff substantially completed the project on May 18, 2005, which was 114 days beyond the final extension date. Accordingly, pursuant to § 307 of the contract, the defendant assessed the plaintiff $57,000 in liquidated damages for its failure to complete the work within the stipulated time. In addition, the defendant retained a balance of $9334.61 of the total contract amount as " 'unbilled retention.' "

On August 4, 2005, more than two months after the project was substantially completed, the plaintiff submitted a claim to the defendant seeking additional compensation for the dewatering problems at the Barnes Avenue site. Subsequently, on November 2, 2005, the plaintiff submitted an additional claim to the defendant for delay related costs it claimed it had incurred during the various extensions of time that had been granted through approved change orders. The plaintiff's requests were denied.

On February 8, 2006, the plaintiff filed the present action against the defendant. The one count complaint alleged that the defendant breached the contract by wrongfully assessing the plaintiff 114 days of liquidated damages and by wrongfully refusing to issue change orders for dewatering at the Barnes Avenue site when the plaintiff encountered subsurface conditions that differed materially from the conditions represented in the contract documents.[5] During a seven day trial in September, 2007, the court heard testimony from several

[5] The complaint also alleged that the defendant breached the contract by wrongfully refusing to pay the plaintiff additional costs for redesign work it performed at both sites. The court concluded that the plaintiff was not entitled to any damages for redesign costs, and the plaintiff has not challenged that determination on appeal.

witnesses and admitted dozens of exhibits. Following trial, the parties submitted extensive posttrial briefs summarizing their respective positions.

On October 16, 2008, the court issued its corrected memorandum of decision.[6] In addition to the facts outlined previously in this opinion, the court set forth the following findings of fact and conclusions of law: (1) the contract documents provide that a contractor may not change materials or the manner of construction unless it obtains a written change order, without which any subsequent claim for payment would be deemed invalid; (2) a contractor that claims it is entitled to additional compensation for extra work on the project is required by the contract documents to provide notice of that claim within ten days of the receipt of the challenged instruction or else the contractor is barred from having that claim considered; (3) the plaintiff began to dewater the entire yard piping site at the Barnes Avenue site from outside the excavation on December 2, 2004, even though there were methods available by which it could have dewatered and completed the yard piping at the site in accordance with the contract's specifications; (4) the plaintiff neither contested the enforceability of the contract's liquidated damages clause, nor argued that the daily rate of liquidated damages was unreasonable; (5) to preserve a claim that it was entitled to certain requested extensions of time, or to dispute the amount of time that it had agreed to accept in a change order, the plaintiff contractually was required to notify the defendant of such claim within ten days from the date that the claim or dispute arose; (6) the plaintiff's dewatering claim, as alleged in its complaint, is predicated expressly on the alleged discovery of existing subsurface conditions that differed materially from the conditions as represented in the contract documents;

---

[6] The court's initial memorandum of decision contained an arithmetic error in the award of damages for the plaintiff's dewatering claim.

(7) the plaintiff failed to provide any proof that the defendant wrongfully refused to issue a change order; (8) the plaintiff failed to meet its obligation to establish that it had encountered materially different subsurface conditions at the Barnes Avenue site and failed to provide the defendant with notice to preserve its claim to any additional dewatering costs until July 22, 2004; (9) the plaintiff was not barred from pursuing its claim for dewatering costs because it preserved that claim through its July 22, 2004 protest letter; (10) although the plaintiff properly preserved its right to recover for reasonable extra dewatering costs while it worked under protest, it was not entitled to recover for any such costs incurred after December 2, 2004, because it breached the contract by implementing the site dewatering method; (11) the plaintiff did not prove that the doctrine of commercial impracticability excused its breach of the contract; (12) the plaintiff failed to comply with the contractually provided process for claiming extra costs incurred during approved extensions of time and, therefore, could not recover such costs; (13) the plaintiff was entitled to collect $9334.61, the amount retained by the defendant as " 'unbilled retention' "; and (14) the plaintiff was not entitled to prejudgment interest on any damages awarded by the court because it failed to establish that the defendant had acted wrongfully.

On the basis of those findings and conclusions, the court awarded the plaintiff $128,314.55 in connection with its dewatering claim and $9334.61 for the unpaid retention, for a total of $137,649.16 in damages. This appeal and cross appeal followed.

I

DEFENDANT'S APPEAL ON DEWATERING CLAIM

The defendant claims that the court improperly awarded the plaintiff $128,314.55, which constituted a

portion of the plaintiff's claimed dewatering expenses at the Barnes Avenue site. Specifically, the defendant argues that the court failed to state, and the evidence failed to demonstrate, that the defendant breached the contract, thereby entitling the plaintiff to an award of damages. We agree.

"As an appellate court, our review of trial court decisions is limited to determining whether their legal conclusions are legally and logically correct . . . . If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *New England Rock Services, Inc.* v. *Empire Paving, Inc.*, 53 Conn. App. 771, 775, 731 A.2d 784, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 353 n.2, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

The parties' contract specifically provides that a claim for additional costs would be recognized only under certain enumerated situations and only if the contractor follows the procedures to preserve such a claim. As found by the court, the plaintiff did preserve its claim for dewatering expenses at the Barnes Avenue site when it submitted its protest letter dated July 22, 2004. In that letter, the plaintiff indicated that it was claiming additional compensation pursuant to § 140 of

the contract, entitled "Claims for Extra Cost."[7] The plaintiff did not specify which subsection it was relying on, but in its letter dated July 6, 2004, it stated: "We reiterate that the site conditions are materially different than those presented in the [c]ontract and therefore a change order must be approved before any work may again commence at this job site." It therefore is apparent that the plaintiff was claiming additional compensation pursuant to subsection (e) of § 140 of the contract. Moreover, no other subsection of § 140 had been mentioned in any of the correspondence from the plaintiff to the defendant or M & E.

---

[7] Section 140 of the contract provides: "a. If the Contractor claims that any instruction by Drawings or otherwise involve extra cost or extension of time, it shall, within ten (10) days after the receipt of such instruction, and in any event before proceeding to execute the work, submit its protest thereto in writing to the City, stating clearly and in detail the basis of any objections. No such claims will be considered unless so made.

"b. Claims for additional compensation for extra work, due to alleged errors in ground elevations, contour lines, or bench marks, will not be recognized unless accompanied by certified survey data, made prior to the time the original ground was disturbed, clearly showing that errors exist which resulted, or would result, in handling more material, or performing more work, than would be reasonably estimated from the Drawings and maps issued.

"c. Any discrepancies which may be discovered between the actual conditions and those represented by the Drawings and map shall at once be reported to the City and work shall not proceed except at the Contractor's risk, unless written instructions have been received by the Contractor from the City.

"d. If, on the basis of the available evidence, the City determines that an adjustment of the Contract Price and/or time is justifiable, the procedure shall then be as provided in Section *CHANGES IN THE WORK* under *GENERAL CONDITIONS.*

"e. During the progress of the work, if the Contractor encounters at the site (1) subsurface or latent physical conditions differing materially from those inherent in the work of the character provided for in this Contract, the Contractor shall promptly and before such conditions are disturbed, notify the Engineer in writing. The Engineer shall thereupon investigate such conditions and if the Engineer finds that they do materially differ, it shall cause such changes to be made in the Specifications and Drawings as may be deemed necessary, and shall make such equitable adjustment in the Contract Price or time as justified, if any, by written order, as provided in the section *CHANGES IN THE WORK.* No claim of the Contractor for

This conclusion is further supported by the allegations in the plaintiff's complaint. The relevant paragraphs, paragraphs ten and eleven,[8] alleged that the plaintiff discovered "existing subsurface conditions that differed materially from the conditions represented in the contract documents" and that the defendant "refused to recognize that there were differing site conditions than those represented in the contract documents and refused to issue a change order to the contract that would permit plaintiff to deviate from the contract requirements concerning dewatering." The court, in its memorandum of decision, stated: "The plaintiff's dewatering claim is set forth in paragraphs nine through fourteen of its complaint and is expressly predicated upon the alleged discovery of existing subsurface conditions that differed materially from the conditions represented in the contract documents." (Internal quotation marks omitted.)

---

adjustment hereunder shall be allowed unless it has given notice as above required." (Emphasis in original.)

[8] Paragraph ten of the complaint alleges: "*In October, 2003, upon discovery of existing subsurface conditions that differed materially from the conditions represented in the contract documents,* plaintiff requested that it be permitted to de-water the Barnes and Quinnipiac sites outside of the excavation areas and that the City issue a change order approving this change in the contract requirements. *The City wrongfully refused to recognize the changed conditions* and rejected plaintiff's request, essentially taking the position that any dewatering outside of the excavation would be conducted at plaintiff's risk." (Emphasis added; internal quotation marks omitted.)

Paragraph eleven of the complaint alleges: "Subsequently, plaintiff conducted a further examination of the Barnes site and submitted additional information to the City in May 2004, including the conclusions of Dr. Clarence Welti, a preeminent geotechnical engineer, that de-watering outside of the excavation was necessary in order to proceed with plaintiff's work at the Barnes site. *Plaintiff reiterated its request that the City recognize a changed condition, that the contract requirements be changed, and that plaintiff be permitted to dewater outside of the excavation. Once again, the City refused to recognize that there were differing site conditions than those represented in the contract documents, and refused to issue a change order to the contract that would permit plaintiff to deviate from the contract requirements concerning dewatering.*" (Emphasis added.)

Accordingly, for the plaintiff to prevail on its dewatering claim, it would have had to prove to the court that the conditions at the Barnes Avenue site differed materially from the conditions described in the contract documents. The court does not make that factual finding in its decision.[9] Although the court concluded that the plaintiff had preserved its right to request the additional compensation by filing its July 22, 2004 protest letter, the court never stated that the plaintiff satisfied its burden of proof with respect to materially differing conditions. In fact, the court found to the contrary in its memorandum of decision: "The plaintiff failed to meet its obligation to establish that it had encountered materially different subsurface conditions . . . ." (Internal quotation marks omitted.) Preservation of a claim does not equate to proof of that claim.

It is not possible to infer that the court, by awarding damages, concluded that the plaintiff met its burden of proof on that claim. A thorough review of the transcript reveals no testimony that would permit the factual determination that the plaintiff encountered materially different conditions at the Barnes Avenue site. At trial, Thomas R. Kovacs, the plaintiff's president, acknowledged that he had received soil boring reports with the bid package, that the boring reports indicated running sand at the site and that the actual conditions encountered were no different from the conditions represented

[9] After the defendant's appeal and the plaintiff's cross appeal were filed with this court, the plaintiff filed a motion for articulation pursuant to Practice Book § 66-5. It requested that the trial court further articulate its decision as follows: "That the Court articulate that the damages awarded . . . for the plaintiff's dewatering activities for the pipe excavation at the Barnes [Avenue] site were awarded to the plaintiff as a result of its encountering unanticipated subsurface conditions (e.g., running sand) and that the defendant breached the contract by failing to compensate plaintiff for these costs despite plaintiff's timely requests for such compensation." The trial court denied the motion for articulation, and the plaintiff then filed with this court a motion for review of the trial court's decision. We granted the motion for review but denied the relief requested.

in those reports. Richard Kovacs testified that he was involved in the bidding process and had submitted the plaintiff's bid with the intent to utilize the site dewatering method rather than the excavation dewatering method specified in the documents. He requested a deviation to permit site dewatering because that was the way he had bid the contract, and for no other reason. Accordingly, we cannot infer that the court concluded that the plaintiff encountered materially different subsurface conditions because there is nothing in the record that would support that finding.

In its posttrial brief, the plaintiff did not argue that it was entitled to additional compensation because of the discovery of materially different subsurface conditions. Instead, the plaintiff claimed that compliance with the excavation dewatering requirement was commercially impracticable, if not impossible. The court concluded that the plaintiff failed to meet its burden of proof on that claim. On appeal, the plaintiff does not argue that it was entitled to additional compensation because of the discovery of materially different subsurface conditions. Instead, it claims that the defendant breached the contract because the excavation dewatering requirement was a defective specification, and the defendant unreasonably refused to issue a change order to permit utilization of the site dewatering method. The defendant correctly points out, however, that the trial court found that the plaintiff's dewatering claim, as alleged in its complaint, was predicated expressly on the purported discovery of materially different subsurface conditions at the site. The plaintiff never requested permission to amend its complaint to include allegations of a defective dewatering specification.[10]

---

[10] Even if the plaintiff had amended its complaint to include an allegation that the dewatering specification was defective, the plaintiff's own experts acknowledged at trial that site dewatering was not the exclusive method for completing the job. The court found that the testimony indicated that a contractor could have dewatered and completed the yard piping at the Barnes Avenue site according to the contract specifications.

We agree with the court's finding that the plaintiff's breach of contract claim with respect to dewatering expenses is predicated on the alleged discovery of materially different subsurface conditions. Construction of pleadings is a question of law. Our review of a trial court's interpretation of the pleadings therefore is plenary. *Petitte* v. *DSL.net, Inc.*, 102 Conn. App. 363, 374, 925 A.2d 457 (2007). The plaintiff's one count complaint alleges that the defendant wrongfully refused to pay the plaintiff additional redesign costs, wrongfully assessed the plaintiff liquidated damages, wrongfully refused to recognize changed conditions at the Barnes Avenue site and wrongfully refused to issue a change order to permit site dewatering. There are no allegations in the complaint that the excavation dewatering specification was defective.

"Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings." (Citations omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008). It is fundamental in our law that "the right of a plaintiff to recover is limited by the allegations of the complaint . . . and any judgment should conform to the pleadings, the issues and the prayers for relief." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). "The [trial] court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005). "Facts found but not averred cannot be made the basis for a recovery." (Internal quotation marks omitted.) *Moulton Bros., Inc.* v. *Lemieux*, 74 Conn. App. 357, 361, 812 A.2d 129 (2002).

In the present case, the plaintiff explicitly alleged that the breach of contract was premised on its discovery of materially different subsurface conditions. The court, therefore, in addressing the plaintiff's claim for additional compensation for dewatering at the Barnes Avenue site, could award damages only if the plaintiff proved that the contract was breached in that manner. The court determined that the plaintiff failed to establish that it had encountered the claimed materially differing conditions. The record supports that determination because the testimony of Richard Kovacs and Thomas Kovacs confirms that the request for site dewatering was not based on newly discovered soil conditions but, rather, that site dewatering had been the plaintiff's intended method of dewatering at the time the bid was submitted. By awarding the plaintiff damages for its dewatering claim, the court improperly granted relief on a theory that was not alleged in the complaint.

On the basis of the foregoing analysis, we conclude that the court's determination that the plaintiff was entitled to $128,314.55 for additional dewatering expenses does not flow legally or logically from the subordinate facts found. The award was improper because there is no factual basis in the record for a determination that the plaintiff discovered materially different subsurface conditions, which was the premise for the plaintiff's dewatering claim as alleged in its complaint. Consequently, that award cannot stand.

II

PLAINTIFF'S CROSS APPEAL

In its cross appeal, the plaintiff claims that the court improperly failed to award the plaintiff (1) the liquidated damages withheld by the defendant, (2) additional costs it incurred for site dewatering and other

work it performed after December 2, 2004, and (3) prejudgment interest pursuant to § 37-3a. We will address the plaintiff's liquidated damages claim and its prejudgment interest claim, limited to the award of $9334.61.[11] Because we have concluded that the court's award of $128,314.55 for dewatering expenses was improper, it is unnecessary to address the plaintiff's second claim or the court's denial of prejudgment interest with respect to that amount.

A

Liquidated Damages

The plaintiff claims that the court improperly failed to award it $57,000 held by the defendant as liquidated damages because the defendant failed to submit any evidence at trial that (1) the damage to be expected as a result of late performance was uncertain or difficult to prove and (2) the amount stipulated in the contract was reasonable as to the presumable loss that would be sustained by the defendant as a result of late performance.[12] This claim is without merit.

The parties' contract contains a provision for liquidated damages. Section 307, entitled "Liquidated Damages for Delay," provides in relevant part: "The Contractor guarantees that he can and will complete the work within the time limit stated in the Contract

---

[11] The defendant does not contest the court's award to the plaintiff of $9334.61 in damages for unpaid retention in this appeal.

[12] The plaintiff also has claimed that the court should have awarded at least a portion of the liquidated damages withheld by the defendant in light of the court's determination that the plaintiff was entitled to $128,314.55 for additional work in connection with the dewatering activities at the Barnes Avenue site. The plaintiff argues that the additional work would have required additional time to perform, and, therefore, the court should have granted relief for the defendant's failure to grant the plaintiff time extensions to the contract completion date. Because we have concluded that the award of $128,314.55 was improper, we need not and do not address this claim.

Documents or within the extended time limit provided elsewhere in the Documents. Since the damages and [losses] to the City which will result from the failure of the Contractor to complete the work within the stipulated time will be most difficult or impossible to accurately assess, the damages to the City for such delay and failure on the part of the Contractor will be liquidated in the sum of *five hundred dollars ($500.00)* each calendar day, Sundays and Holidays included, by which the Contractor fails to complete the work o[r] any [p]art thereof, in accordance with the provisions hereof and such liquidated damages will not be considered a penalty. The City will deduct and retain from the moneys due or become due hereunder, the amount of the liquidated damages . . . ." (Emphasis in original.)

The defendant withheld $57,000 in liquidated damages, representing 114 days at $500 per day, for the failure of the plaintiff to complete the project within the time stipulated by the contract. In its complaint, the plaintiff alleged that the defendant wrongfully refused to grant the plaintiff extensions of time for its extra redesign work and dewatering difficulties and, therefore, wrongfully assessed liquidated damages against the plaintiff. The complaint did *not* allege that the liquidated damages provision in the contract was unenforceable as a penalty.

"A contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach. . . . A provision for liquidated damages, on the other hand, is one the real purpose of which is to fix fair compensation to the injured party for a breach of the contract. In determining whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase liquidated damages or the

word penalty is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005).

In the present case, the plaintiff did not allege that the liquidated damages provision in the contract was invalid and unenforceable as a penalty. It presented no evidence at trial to demonstrate that the amount assessed for each day of delay was unreasonable. Instead, in its posttrial brief, the plaintiff claimed that the defendant was not entitled to enforce the liquidated damages provision in the contract because the defendant failed in its burden to show that the clause was reasonable and enforceable.

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007). We conclude that it was not the defendant's burden to prove that the damages to be expected as a result of late performance were uncertain or difficult to prove or that $500 per day was reasonable as to the presumable loss that would be sustained by the defendant as a result of late performance. That

burden would have arisen only in the event of a claim by the plaintiff that the liquidated damages provision was invalid because it was a penalty. The plaintiff did not allege that claim in this case.

"A breaching party seeking to nullify a contract clause that fixes an amount of damages for the breach bears the burden of proving that the agreed upon amount so far exceeds any actual damages as to be in the nature of a penalty." *American Car Rental, Inc.* v. *Commissioner of Consumer Protection,* supra, 273 Conn. 314. Under the circumstances of this case, the liquidated damages clause was entitled to the presumption of validity as a bargained for term in the contract. That presumption was rebuttable, but the plaintiff failed to challenge it. See id., 313–14. Accordingly, the plaintiff failed to meet its burden of proof in support of its claim that it was entitled to the liquidated damages withheld by the defendant.

B

Prejudgment Interest

The plaintiff also claims that the court improperly failed to award it prejudgment interest pursuant to § 37-3a.[13] Specifically, the plaintiff claims that the court, in declining to award the requested interest because it did not find any " 'bad faith' " on the part of the defendant, employed an improper standard in determining whether the defendant had wrongfully withheld the unpaid retention amount of $9334.61.

In its memorandum of decision, the court correctly set forth the proper standard and considerations for awarding prejudgment interest. Citing to *Smithfield Associates, LLC* v. *Tolland Bank,* 86 Conn. App. 14, 26,

---

[13] General Statutes § 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005), the court noted that such an award is discretionary, that it is subject to equitable considerations and that not all improper detentions of money are wrongful. It found that "the plaintiff has failed to establish that the defendant acted wrongfully." It then concluded that prejudgment interest was not warranted because it "[did] not find any bad faith on the part of the defendant."

In *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 755, 793 A.2d 1118 (2002), the trial court likewise declined to award prejudgment interest on the ground that it had found "no evidence of bad faith or wilfulness" on the part of the defendants. (Internal quotation marks omitted.) We concluded in *Maloney*, as we do in this case, that the court was well within the exercise of its sound discretion when it declined to award such interest. "A plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so. The fact that an award of such interest is discretionary and subject to equitable considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful." Id., 756. The court, therefore, did not abuse its discretion in denying prejudgment interest.

On the defendant's appeal, the judgment is reversed in part and the case is remanded with direction to vacate the award of $128,314.55 to the plaintiff. On the plaintiff's cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.