NEW BREED LOGISTICS, INC. *v.* CT INDY
NH TT, LLC, ET AL.
(AC 31178)

DiPentima, C. J., and Lavine and Alvord, Js.

564

Submitted on briefs March 11—officially released June 21, 2011

*Kenneth W. Ritt* filed a brief for the appellant (plaintiff).

*Christopher J. Major* filed a brief for the appellee (named defendant).

*Opinion*

LAVINE, J. The plaintiff, New Breed Logistics, Inc., appeals from the judgment of the trial court, *A. Robinson, J.*, claiming that the court improperly dissolved a temporary injunction issued against the defendant CT INDY NH TT, LLC,[1] by failing to consider the Connecti-

---

[1] The defendant Bozzuto's, Inc., is not a party to this appeal. In this opinion, we refer to CT INDY NH TT, LLC, as the defendant.

cut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.[2]

The following facts, as alleged in the August, 2008, amended verified complaint (complaint) provide the context of this appeal. The plaintiff alleges that it is a third-party logistics service provider. On or about July 7, 2006, the plaintiff entered into a commercial lease (lease) with PREI North Haven Developers, LLC (the defendant's predecessor in interest), to rent a portion of the premises located at 300 Montowese Avenue in North Haven (property), on which three buildings are situated: the grocery building, the produce building and the transportation building. Initially, the plaintiff leased a portion of the grocery building. The plaintiff alleged that, in accord with its expectation that its business would grow and it eventually would use all of the buildings on the property, it negotiated lease provisions granting it the option to lease the entire grocery building by a date certain. The plaintiff also secured the option to lease the produce building provided that it exercised the option by a date certain. In addition, the lease gave the plaintiff the right of first offer to lease the entire grocery building and/or the produce building, if the plaintiff had not exercised its options.

The plaintiff further alleges that it exercised its option to lease the entire grocery building and thereafter a first amendment was added to the lease. The amendment granted the plaintiff the right to exercise options to lease the produce building and the transportation building and the right of first offer if it did not exercise its

[2] After the plaintiff appealed, the defendant filed a motion to dismiss claiming that the appeal was not taken from a final judgment. This court denied the motion to dismiss. The parties, on their own initiative, addressed the jurisdictional question again in their briefs, but presented no new analysis. We therefore decline to revisit the issue. See, e.g., *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 497 n.1, 854 A.2d 749, cert. denied, 271 Conn. 928, 859 A.2d 581 (2004).

option on the transportation building. Subsequently, the plaintiff and the defendant entered into a second amendment to the lease. The plaintiff alleges that, during the negotiation of the second amendment to the lease, the defendant sought to alter the plaintiff's right of first offer with respect to the produce and transportation buildings. Because it expected to expand and eventually use the entire property, the plaintiff refused to relinquish its right of first offer with respect to either of the buildings.

The plaintiff also alleges, upon information and belief, that during 2008, the defendant entered into an agreement to lease the produce building to Bozzuto's, Inc. (Bozzuto's). By letter dated July 17, 2008, the plaintiff reminded the defendant that it had a right of first offer on the produce building and that the defendant had not complied with its obligations under the lease.[3] On July 18, 2008, the defendant offered to lease the transportation building to the plaintiff, and on July 23, 2008, the plaintiff exercised its right to lease the entire transportation building. On July 24, 2008, the defendant sent the plaintiff a proposed third amendment to the lease, indicating that another party was interested in the transportation building. The defendant did not offer the plaintiff all of the parking spaces or exclusive use of the fueling system and truck wash associated with the transportation building. On July 28, 2008, the plaintiff executed the proposed third amendment to the lease. Upon information and belief, the plaintiff alleges that on July 30, 2008, the defendant and Bozzuto's executed a lease for the produce building and the right to access the utility room in the transportation building notwithstanding the fact that the defendant had leased the transportation building to the plaintiff. The complaint

---

[3] The plaintiff sent Bozzuto's a copy of the letter thereby putting it on notice of its right of first offer.

alleges breach of contract, breach of the implied covenant of good faith and fair dealing and violation of CUTPA against the defendant and seeks temporary and permanent injunctions, a declaratory judgment and specific performance against the defendant and Bozzuto's.

At some time prior to the events that gave rise to this action, when the property was still owned by the defendant's predecessor in interest, the plaintiff erected a fence near the grocery building. Although the defendant previously had not objected to the fence, in August, 2008, after the plaintiff had commenced this action, the defendant sent the plaintiff a notice of default for failing to remove the fence as required under section nine of the first amendment to the lease.[4] The plaintiff removed the fence, but later claimed that removing the fence had an adverse effect on security. The plaintiff hired security guards, which it claims did not satisfy its security concerns. The plaintiff designed a new fence to be erected on the property and on October 9, 2008, asked the defendant for permission to install it. On October 24, 2008, the defendant responded by e-mail that based on a review of the lease, the plaintiff did not have a right to construct a fence and denied the request. The plaintiff claims that the defendant's refusal to grant permission to erect the fence is commercially unreasonable and unless permission was forthcoming, the plaintiff would avail itself of all its available remedies.

---

[4] Section nine of the first amendment to the lease states in relevant part: "Fence. . . . Tenant shall be permitted to install a fence around the area shown on Exhibit 'B,' which Tenant hereby agrees to install in two phases as noted on Exhibit 'B.' Tenant shall be responsible for maintaining the fence at its sole cost and expense. If Tenant fails to exercise the Produce Expansion Option in accordance with the terms of Section 34 of the Lease (or, in the event that Tenant validly exercises the Produce Expansion Option, upon the expiration or sooner termination of the Lease), unless otherwise directed by Landlord, Tenant, at its sole cost and expense, shall remove the fence within (5) days of the Produce Exercise Deadline . . . ."

On or about December 9, 2008, the plaintiff began to erect the new fence,[5] claiming that the new fence was critical to separate Bozzuto's space from the plaintiff's and to provide a perimeter around the grocery building. The defendant immediately sent the plaintiff a notice of default. On December 11, 2008, the plaintiff filed an application for an ex parte temporary injunction order, order to appear and show cause and temporary injunction (application). The application was presented to the court, *Cosgrove, J.*, which ordered the parties to appear before it on December 17, 2008. After conferring with the parties, the court set the matter down for an evidentiary hearing on January 8, 2009, and entered a temporary injunction without a hearing and ordered the plaintiff to post a bond in the amount of $25,000. Judge Cosgrove found, in part, that "immediate and irreparable injury will result to [the] [p]laintiff prior to a hearing unless the requested injunctive relief is granted . . . ."

Thereafter, the parties appeared before Judge Robinson on January 8 and March 30, 2009. On April 1, 2009, the defendant filed a motion to dissolve the temporary injunction and for costs and attorney's fees. Judge Robinson issued a memorandum of decision on May 27, 2009, dissolving the temporary injunction. The court noted the complexity of the underlying litigation but concluded that the issues related to the temporary injunction were relatively simple. The court also found that notwithstanding the plaintiff's argument that a CUTPA standard applies, "it is clear that the initial [o]rder for injunctive relief issued on the basis of a claim of irreparable harm. Had the plaintiff desired for

---

[5] The plaintiff's business requires it to store aerospace materials for Sikorsky Aircraft Corporation and Pratt and Whitney. The plaintiff stores approximately $750 million worth of government-furnished equipment, including high-value reusable containers outside the buildings it leases. The containers are worth hundreds of thousands of dollars, and are, the plaintiff claims, critical to its operation. The lease permits the plaintiff to store materials outside of buildings.

the court to apply a different standard, it should have alerted the court and the parties to this in [its] initial filing. Instead, in the December, 2008 request for injunctive relief, the plaintiff asked for a finding of irreparable harm; and a finding that there was good cause for the issuance of the [o]rder. The hearing before this court further establishes that the CUTPA claim, while existing as a claim for relief in the instant case, is not the governing legal cause of action relating to the fence, its erection or its removal."

The court also found that the plaintiff failed to establish that it will suffer irreparable harm if it is required to remove the fence or that it likely will prevail on the merits of its claim that it has a right to erect a fence. The court acknowledged that the timing of the defendant's request that the plaintiff remove the fence raises questions about its motive, but stated that an improper motive alone is insufficient to establish bad faith or to meet the plaintiff's burden of proof. Ultimately the court concluded that the plaintiff has remedies at law and in equity and that they are sufficient to compensate the plaintiff for losses illegally or improperly caused by the defendant. The court, therefore, dissolved the temporary injunction.[6]

On appeal the plaintiff claims that the court improperly dissolved the temporary injunction by (1) failing to apply the presumption of irreparable harm flowing from a CUTPA violation[7] and (2) finding that the plaintiff

---

[6] The court ordered that a hearing be scheduled to address the issue of attorney's fees and costs.

[7] In support of this aspect of its claim, the plaintiff contends that "[w]here . . . a plaintiff shows that it is likely to succeed on the merits of a CUTPA claim, it need not show irreparable harm." In support of its contention, the plaintiff cites *Dept. of Transportation* v. *Pacitti*, 43 Conn. App. 52, 58, 682 A.2d 136, cert. denied, 239 Conn. 937, 684 A.2d 707 (1996). "[T]he enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted." (Internal quotation marks omitted.) Id., citing *Conservation Commission* v. *Price*, 193 Conn. 414, 429, 479 A.2d 187 (1984). The plaintiff's position is a good example of citing a rule but

was not likely to succeed on the merits or that the equities tipped in its favor. We disagree with the plaintiff's claims.

The following standard of review applies to the review of a trial court's ruling on an injunction. "The

failing to trace its origins or the factual circumstances in which it applies. The statute at issue in *Dept. of Transportation* is General Statutes § 14-314 (failure to comply with traffic regulation) and the statute in *Conservation Commission* is General Statutes § 22a-44 (violation of wetlands and watercourses regulations). Both are distinguishable from CUTPA. The statutes in those two cases permit a court to grant an injunction at the request of an agency or its authorized official to enforce compliance with duly enacted legislation or regulations. The no-irreparable harm rule has its origins, however, in *Johnson* v. *Murzyn*, 1 Conn. App. 176, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984).

In *Johnson*, this court determined that a zoning enforcement officer seeking to enjoin, under General Statutes § 8-12, a violation of the town's zoning regulations did not have to allege and prove irreparable harm and the lack of an adequate legal remedy. Id., 177. Section 8-12 "was enacted to provide local zoning enforcement officers with a means of enforcing their zoning regulations. . . . It is true that the issuance of an injunction is the exercise of an extraordinary power which rests in the sound discretion of the trial court and that ordinarily the party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate legal remedy. . . . An injunction sought pursuant to a statute by the public official charged with the responsibility of enforcing the law, however, is an exceptional case which stands on a different footing." (Citation omitted.) Id., 179. Our Supreme Court adopted the rule in *Conservation Commission* v. *Price*, supra, 193 Conn. 429.

"[T]he legislature expressly provided in the [Inland Wetlands and Watercourses Act (act)] that the [S]uperior [C]ourt, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to impose fines pursuant to this section. . . .

"It is the court's duty to carry out the intention of the legislature as expressed in the statute it has enacted and to make the remedy it has provided an effective and efficient means of dealing with violations of the act and regulations properly promulgated under its authority. . . . We point out, however, that [t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a [trial judge] . . . is not mechanically obligated to grant an injunction for every violation of law. . . . Put another way, we do not view the statutory grant of jurisdiction as destroying the discretion of a

issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier." (Internal quotation marks omitted.) *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 648, 646 A.2d 133 (1994). "How a court balances the equities is discretionary but if, in balancing those equities, a trial court draws conclusions of law, our review is plenary." *State* v. *Blake*, 108 Conn. App. 336, 356, 947 A.2d 998 (*Dupont, J.*, dissenting in part), aff'd, 289 Conn. 586, 958 A.2d 1236 (2008). "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Tighe* v. *Berlin*, 259 Conn. 83, 87, 788 A.2d 40 (2002).

The plaintiff claims that in dissolving the temporary injunction, the court failed to consider CUTPA. Although the plaintiff alleged a violation of CUTPA in its complaint, a CUTPA violation was not the basis of its application for a temporary restraining order or the basis on which Judge Cosgrove ordered the temporary injunction. The plaintiff's claim, therefore, fails.

In its December 11, 2008 application, the plaintiff alleged in part that it was "seeking an injunction to prevent irreparable harm and to maintain the status quo by enjoining [the defendant] from using self-help remedies and from carrying out its threat to remove . . . a fence used by [the plaintiff] to secure sensitive and confidential government property stored in the grocery building. The fence sought to be removed by [the

trial court in every case under this act." (Citations omitted; internal quotation marks omitted.) Id., 429–30.

defendant] does not interfere with the use of the Premises and neither [the defendant] nor Bozzuto's . . . will be harmed if [the defendant] is enjoined from removing a fence." The plaintiff also alleged: "The issuance of temporary injunctive relief is necessary to prevent immediate and irreparable harm to [the plaintiff] for which there is no adequate remedy at law. Unless and until [the defendant is] restrained by order of this court, [the defendant] will remove the fence, jeopardize the security of highly-sensitive and valuable government property, unreasonably interfere with [the plaintiff's] use of the [p]roperty and potentially attempt to exercise other remedies it claims are available to it.

"[The plaintiff] is likely to succeed on the merits of its claims because [the defendant] has breached the . . . lease, has breached its duty of good faith and fair dealing, and has committed unfair acts designed to deprive [the plaintiff] of rights and the right to use and enjoy the Premises. . . . The balance of the hardships [tip] decidedly in favor of [the plaintiff] in that the fence will not cause any harm to [the defendant] whereas it will cause significant harm to [the plaintiff's] business and it would jeopardize [the plaintiff's] relationship with customers. . . . A temporary injunction order is therefore necessary to maintain the status quo. . . . Based on the immediate threat, as set forth . . . [the plaintiff] is entitled to injunctive relief from this court pursuant to General Statutes § 52-471."[8]

In granting the temporary injunction, Judge Cosgrove found that "it appears to the undersigned that immediate irreparable injury will result to [the] [p]laintiff prior to a hearing unless the requested injunctive relief is granted . . . ." He therefore ordered that the defendant

---

[8] General Statutes § 52-471, an enabling statute, provides in relevant part: "(a) Any judge of any court of equitable jurisdiction may, on motion, grant and enforce a writ of injunction, according to the course of proceedings in equity . . . ."

is "temporarily enjoined and restrained from removing the fence installed by [the plaintiff] near the building known as the grocery building which is necessary to safeguard the security of sensitive and confidential government property; and . . . is temporarily enjoined and restrained from exercising any other remedies available at law, in equity or under Section 17 of the lease between [the parties], based on [the plaintiff's] installation of the fence until such time as the rights of the parties are determined . . . ." Following a hearing before Judge Robinson, the defendant filed a motion to dissolve the temporary injunction claiming that there is no legal or factual basis for such relief.

"[P]arties are bound by their pleadings." *Edelman* v. *Page*, 123 Conn. App. 233, 243, 1 A.3d 1188, cert. denied, 299 Conn. 908, 10 A.3d 525 (2010). "Construction of pleadings is a question of law. Our review of a trial court's interpretation of the pleadings therefore is plenary." *Kovacs Construction Corp.* v. *Water Pollution & Control Authority*, 120 Conn. App. 646, 659, 992 A.2d 1157, cert. denied, 297 Conn. 912, 995 A.2d 639 (2010).

In dissolving the temporary injunction, Judge Robinson found that under the lease, the defendant had a right to demand that the plaintiff remove the fence, and the plaintiff does not contest that fact. The court distinguished the claims the plaintiff alleged in its complaint and the claims alleged in its application,[9] and concluded that the controlling issues were whether the

---

[9] Pursuant to our construction of the complaint and of the application, the wrongdoing alleged in the complaint is the defendant's failure to adhere to the right of first offer in the lease and the wrongdoing alleged in the application is the defendant's threatening to default the plaintiff for constructing a fence that is forbidden by the lease. In its complaint, the plaintiff alleges that the defendant's failure to abide by the right of first offer is a deceptive trade practice under CUTPA. Whether the defendant's alleged breach of the lease is a CUTPA violation is not relevant to whether the plaintiff will suffer an irreparable loss if it cannot construct a fence for security reasons. Those two issues are separate and distinct.

plaintiff had established that it will suffer irreparable harm if it is required to remove the partially installed fence, whether the plaintiff had established that it will likely prevail in establishing its right to install the fence over the defendant's objection and whether the plaintiff has any viable remedies at law, should it so prevail. The court found that the plaintiff will not suffer irreparable harm if it must remove the fence, as the fence is not the only way that the plaintiff can secure its leasehold. The plaintiff also failed to establish that it likely will prevail on the merits of its claim that it has a right to erect a fence. Finally, the court found that the plaintiff has remedies at law and in equity to establish its claims against the defendant.

The plaintiff's primary claim on appeal is that the court failed to apply CUTPA in deciding whether to dissolve the temporary injunction. In its application, the plaintiff claimed that the defendant should be enjoined from removing the fence so that it would not suffer irreparable harm and that was the basis of Judge Cosgrove's order. Although the application recites claims alleged in the complaint including a violation of CUTPA, that violation was not alleged as a ground for enjoining the defendant from removing the fence. On the basis of our review of the record, we agree with Judge Robinson that the plaintiff failed to carry its burden of demonstrating irreparable harm if the defendant was not enjoined from removing the fence. The plaintiff has not identified any evidence of harm to its property or that of its customers due to the absence of a fence. Because the plaintiff has failed to demonstrate harm, we cannot conclude that the equities tip in its favor. See *Berin* v. *Olson*, 183 Conn. 337, 343, 439 A.2d 357 (1981). We also agree with the court that the plaintiff has adequate remedies at law. The plaintiff concedes that the right to construct a fence on the leasehold is controlled by the lease, which is a question of law. See

*Rogers* v. *Great Atlantic & Pacific Tea Co.*, 148 Conn. 104, 106, 167 A.2d 712 (1961).

The judgment is affirmed.

In this opinion the other judges concurred.