DAVID WELLES ET AL. *v.* CHESTER LICHAJ ET AL.
(AC 33071)

DiPentima, C. J., and Bear and Bishop, Js.

---

Argued February 6—officially released June 26, 2012

*Zbigniew S. Rozbicki,* for the appellants (defendants).

*Ruth C. Nadeau,* with whom was *J. Michael Scony- ers,* for the appellees (plaintiffs).

*Opinion*

BISHOP, J. The defendants, Chester Lichaj and Nicole Lichaj, appeal from the judgment of the trial court granting an injunction in favor of the plaintiffs, David Welles and Lori Welles, enjoining Chester Lichaj from maintaining a right-of-way over the plaintiffs' property. The defendants claim that the court improperly (1) denied them their right to a jury trial, (2) granted injunctive relief, (3) construed the language of the defendants' deed, (4) defined the rights and responsibilities of the parties in regard to the property in question and (5) issued an order that affected the rights of Nicole Lichaj.[1] We reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our consideration of the issues on appeal. The plaintiffs own and reside at 37 Ballyhack Road in West Cornwall. The defendants own and reside at 39 Ballyhack Road.[2] Pursuant to a deed, the defendants have a right-of-way over the plaintiffs' land for the purpose of gaining access to their property from Ballyhack Road.[3] The fifty foot wide right-of-way

---

[1] Because we find in favor of the defendants as to the first, second and third claims on appeal, we need not reach the merits of the fourth and fifth claims.

[2] The defendants jointly purchased the property located at 39 Ballyhack Road in 2003.

[3] The right-of-way was created as a result of an approved subdivision of a large tract of land into two lots; lot 1 is owned by the plaintiffs and lot 2 is owned by the defendants. Schedule A in the deed conveying the property to the defendants contains the language creating the easement over the driveway, the same language that appeared in the deed to their predecessors in title. The deed provides in relevant part: "All parties agree that the right of way and its continuation are to be maintained in their present condition, which may require periodic grading, re-graveling, cleaning or repairs of culverts, and snow plowing . . . . Responsibility for payment for said maintenance shall be shared equally by the owners of Lot 1 and Lot 2 . . . . If the right of way is damaged by either party . . . then the party or parties responsible for the damage shall bear the cost of restoring the right of way to its present condition."

extends from Ballyhack Road, over a portion of the plaintiffs' land, to the defendants' residence, a distance of approximately 1400 feet. The right-of-way provides the only means of access for the parties from Ballyhack Road, a public highway, to their residences.

In 2004, Chester Lichaj began using his tractor to remove snow from the right-of-way. The plaintiffs made multiple requests to both defendants that he stop plowing the right-of-way because Lori Welles' father historically had plowed it for them and if an emergency arose, they preferred to call a professional to attend to the snowplowing. Nevertheless, Chester Lichaj periodically plowed the right-of-way with his own tractor even though Lori Welles' father also continued to plow the right-of-way until his truck failed during the 2005–2006 winter. Thereafter, the plaintiffs hired David Hurlburt to plow the driveway. Chester Lichaj, however, continued to plow the driveway as well during the same winter. This pattern continued, with the plaintiffs hiring Hurlburt but Chester Lichaj still plowing the driveway with his tractor, despite requests from the plaintiffs that he not do so.

Thereafter, in March, 2009, the plaintiffs initiated this action seeking a permanent injunction prohibiting Chester Lichaj from plowing the right-of-way. The defendants filed a counterclaim sounding in tort alleging that the plaintiffs intentionally and maliciously interfered with their use of the right-of-way and the quiet enjoyment of their land. The defendants also claimed intentional and negligent infliction of emotional distress. More specifically, they alleged that on multiple occasions while Chester Lichaj plowed snow off the right-of-way he was accosted verbally by David Welles in an aggressive and abusive manner.

Although a jury was selected for this case, on October 28, 2010, the court directed the parties to identify those

issues that were properly before the court, to identify those issues that were to be submitted to the jury and to provide authority in support of the parties' respective positions regarding whether the matter was properly before a jury. On November 5, 2010, the court ruled that the plaintiffs had sufficiently alleged irreparable harm and a lack of remedy at law, and, therefore, the plaintiffs' cause of action sounded in equity. In addition, the court concluded that if the plaintiffs were to prevail on their claim then the defendants' counterclaim necessarily would fail. The court's written order directed that "this matter be tried to the court first, and the jury that has been selected will be discharged." Through this order, the court limited the trial to the equitable issues in the plaintiffs' amended complaint and their claim for injunctive relief. The defendants were not given the opportunity to present their counterclaim for damages to the jury.

On December 9, 2010, the court rendered judgment for the plaintiffs against Chester Lichaj, granting the plaintiffs a permanent injunction, enjoining him "from performing maintenance activities, as those activities are defined in the deed, on any part of the right-of-way that is the subject of this action. All maintenance activities will be carried out by third parties who are in the business of performing such maintenance activities . . . [except upon the occurrence of] a medical emergency." This appeal followed. Additional facts will be set forth as necessary.

I

The defendants' first claim is that the court improperly ruled that the plaintiffs' claim was equitable in nature, and incorrectly removed the entire action from the jury for a court trial even though the defendants' counterclaim sought money damages. We conclude that the plaintiffs' claim was in fact equitable, and, therefore

it was properly removed from the jury list. We conclude, as well, that the defendants were entitled to a jury trial on their counterclaim for damages notwithstanding the nature of the plaintiffs' complaint. In particular, it is apparent from a reading of the counterclaim that its vitality was not dependent on the defendants' success against the plaintiffs' equitable claim. Consequently, regardless of whether the plaintiffs were entitled to injunctive relief, the defendants independently were entitled to have a jury decide the issues presented in their counterclaim through which they sought legal relief.

The right to a jury trial in Connecticut originates from article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, which provides in relevant part that "[t]he right of trial by jury shall remain inviolate . . . ." This particular provision of the constitution has been construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. See *L & R Realty* v. *Connecticut National Bank*, 246 Conn. 1, 9, 715 A.2d 748 (1998). The fundamental right to a jury trial, however, is subject to certain limitations. Id. One limitation is that the right does not extend to equitable claims. *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 209, 464 A.2d 35 (1983). "Our case law has spoken to the resolution of factual issues in the context of actions essentially equitable or essentially cognizable at law . . . [and we have stated that] [w]here incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers." (Citation omitted; internal quotation marks omitted.) Id., 210. "[T]he true test of a right to a jury trial is whether the cause of action stated (rather than merely the relief claimed) is essentially legal as distinguished from essentially equitable." (Internal quotation

marks omitted.) Id., 211. Furthermore, it is well established that an injunction is an equitable form of relief and that the proper remedy to stop interference with an owner's use and enjoyment of an easement is an injunction. See *Peckheiser* v. *Tarone*, 186 Conn. 53, 60–61, 438 A.2d 1192 (1982). Because the plaintiffs' claim was equitable in nature, the court properly ruled that it should be tried to the court.

As to the defendants' counterclaim, however, its resolution was not dependent on the outcome of the plaintiffs' equitable claim. The defendants' counterclaim was founded in tort and did not rely, for its vitality, on the defendants' success in defending against the plaintiffs' equitable claim. Even if an injunction was deemed a proper remedy in this situation, the issuance of a proper injunction would not be responsive to the defendants' counterclaim as it related to the alleged behavior of the plaintiffs in the manner in which they allegedly sought to enforce their rights regarding use of the right-of-way. In short, regardless of whether the defendants did in fact interfere with the plaintiffs' use of the right-of-way, the law does not contemplate that the plaintiffs would be entitled to protect their property rights by abusive behavior. Because the defendants were entitled to a jury trial on their counterclaim, the court should not have removed the defendants' counterclaim from the jury and should not have determined that the viability of the defendants' counterclaim would be determined by its ruling on the plaintiffs' request for injunctive relief.[4]

---

[4] That is not to say that the court should be prevented, as a matter of trial management, from ordering the sequence of the trials and giving a priority in time to the plaintiffs' complaint. Trial management, however, is not a vehicle for the dispensing of substantive rights where, as in this case, the defendants' entitlement to a jury trial on the legal claims asserted in their counterclaim is not dependent on the outcome of the court trial on the plaintiffs' equitable claim.

## II

The defendants' second claim is that the court improperly granted injunctive relief. More specifically, the defendants argue that the court abused its discretion in granting injunctive relief because the plaintiffs provided no evidence that the defendants' conduct caused them irreparable harm. We agree.

The following standard of review applies to the review of a trial court's ruling on an injunction. "The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the trier. . . . A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *New Breed Logistics, Inc.* v. *CT INDY NH TT, LLC*, 129 Conn. App. 563, 570–71, 19 A.3d 1275 (2011).

Furthermore, "a plaintiff [ordinarily] is entitled to an injunction only in the event that he can show that the threatened conduct will cause him irreparable damage." *Wambeck* v. *Lovetri*, 141 Conn. 558, 564, 107 A.2d 395 (1954). "[T]he owner of [an] easement is entitled to [injunctive] relief only if he can show that he will be disturbed or obstructed in the exercise of his right to use it." Id. "[W]hether damages are to be viewed by a court of equity as irreparable or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary loss suffered." (Internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 90, 527 A.2d 230 (1987). In addition, our Supreme Court has stated that "an injunction may not issue unless to

prevent substantial and irreparable injury to a complainant. . . . If the injury is not substantial, equity will not interfere." (Citations omitted.) *Herbert* v. *Smyth*, 155 Conn. 78, 85, 230 A.2d 235 (1967).

Applying the relevant law to the case at hand, we agree with the defendants that the plaintiffs did not present evidence of irreparable harm entitling them to injunctive relief. The plaintiffs alleged that the defendants interfered with their use of the right-of-way by Chester Lichaj's use of a tractor to plow snow from the right-of-way. The plaintiffs, however, did not demonstrate that the defendants' conduct caused them irreparable harm or injury, let alone substantial irreparable harm. Although Lori Welles testified that she believed that Chester Lichaj's plowing caused damage to the right-of-way, the plaintiffs offered minimal evidence to support such a claim. More importantly, the court made no finding that Chester Lichaj's conduct caused any damage to the right-of-way. In fact, in its memorandum of decision, the trial court concluded: "The court does not find that the evidence supports the plaintiffs' claim that . . . Chester Lichaj has caused physical damage to the right-of-way." Indeed, Hurlburt, the private party hired by the plaintiffs to plow the right-of-way, testified that the snowplowing of Chester Lichaj likely caused less damage to the right-of-way than that caused by Hurlburt's own snowplowing.

Furthermore, there is scant evidence in support of the plaintiffs' claim that the defendants impermissibly interfered with their use of their property. The court's only finding in regard to this claim is that Chester Lichaj told the plaintiffs not to use the right-of-way while he was removing snow from it. Although the court concluded that Chester Lichaj's snowplowing took more time to carry out than a professional would take, it made no finding as to whether the time consumed by his snowplowing constituted an unreasonable interference

with the plaintiffs' use of the right-of-way. Significantly, the court made no finding that the defendants obstructed or interfered with the plaintiffs' right of travel on this shared right-of-way in a manner that would justify the use of the court's equitable powers to grant an injunction. See *Kuras* v. *Kope*, 205 Conn. 332, 342, 533 A.2d 1202 (1987) ("[t]he right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both" [internal quotation marks omitted]). Although it is true that, as a general principle, the loss of enjoyment or use of land is a right whose diminution constitutes serious harm because it cannot adequately be compensated in damages nor be measured by any pecuniary standards, here, the only loss of enjoyment or use found by the court was an unspecified period of time in which the plaintiffs could not utilize the right-of-way while it was being plowed by Chester Lichaj, as opposed to a professional who might take less time to accomplish the same task. The mere fact that when Chester Lichaj plowed snow from the right-of-way the plaintiffs may have been deterred from using it for an unspecified period of time somewhat longer than a third party might take to plow the same area does not justify the intrusion of the state with a court order constricting the defendants' use of the right-of-way. Accordingly, the court abused its discretion in granting the injunction.

## III

The defendants' next claim that the court improperly fashioned orders on the basis of a misinterpretation of the language of the deed creating the right-of-way. More specifically, the defendants contend that the court incorrectly framed orders regarding the parties' respective use of the right-of-way that are in conflict with the deed's clear and unambiguous language. We agree.

As part of its injunctive relief, the court made the following orders regarding the defendants' use of the right-of-way: "Chester Lichaj is permanently enjoined from performing maintenance activities, as those activities are defined in the deed, on any part of the right-of-way that is the subject of this action. All maintenance activities will be carried out by third parties who are in the business of performing such maintenance activities. . . . If the plaintiffs and defendants cannot agree that maintenance is necessary, or if they cannot agree upon the appropriate person or entity to carry out all necessary maintenance, they are ordered to engage the services of a professional arbitrator who will determine whether maintenance is required and who will carry out the needed maintenance."

In determining the character and extent of an easement created by a deed the court must look to the language of the deed. "The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. . . . On appeal the scope of review of such a question is plenary and does not require the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Branch* v. *Occhionero*, 239 Conn. 199, 205, 681 A.2d 306 (1996). "The meaning and effect of the [language in the deed] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . . The primary rule of interpretation . . . is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met."

(Internal quotation marks omitted.) *Bird Peak Road Assn., Inc.* v. *Bird Peak Corp.*, 62 Conn. App. 551, 557, 771 A.2d 260, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001).

Furthermore, if a conveyance is silent as to the duty to maintain an easement, the general rule is that the duty falls on the owner of the easement, referred to as the owner of the dominant estate. "The duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement absent any contrary agreement." *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 560, 524 A.2d 667 (1987). When the terms of the deed or conveyance do provide an agreement as to maintenance, then the relevant language of the deed governs the maintenance of that easement.

Here, the deed provided clear language as to the roles of each party in maintaining the right-of-way.[5] The deed delineated specific activities that constituted maintenance and stated that the parties would share equally the costs associated with those activities. Importantly, the deed makes no reference as to how those activities are to be carried out. See footnote 3 of this opinion. The court, solely on the basis of the cost sharing language of the deed, expanded the clear import of that language to require not only that a third party conduct all plowing activities, but also to prohibit the defendants from plowing the right-of-way.[6] The court's orders, however, represent not an interpretation of the deed's clear language,

---

[5] The deed provides in relevant part: "All parties agree that the right of way and its continuation are to be maintained in their present condition, which may require periodic grading, re-graveling, cleaning or repairs of culverts, and snow plowing . . . . Responsibility for payment for said maintenance shall be shared equally by the owners of Lot 1 and Lot 2 . . . ."

[6] In its memorandum of decision, the court stated: "Snowplowing is one of the road maintenance activities that is explicitly included in the definition of 'maintenance.' The sentence that follows the definition is equally clear: responsibility for 'payment' of 'said maintenance' is to be shared by the lot owners. The phrase 'said maintenance' can only refer to the list of activities

but the imposition of rights and limitations not found in the deed's language. As such, the court improperly incorporated a restrictive covenant into the deed unsupported by its plain language. The language in the deed regarding the cost sharing of maintenance does not provide a basis for the court to have established restrictions limiting the defendants' manner of maintenance where no such limitation reasonably can be implied from the deed's language. See *Hooker* v. *Alexander*, 129 Conn. 433, 436, 29 A.2d 308 (1942) ("restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes which go with title and possession, are not to be extended by implication"). Accordingly, the court improperly interpreted the language of the deed and augmented its clear language with restrictions of the defendants' use of the right-of-way not hitherto present in the deed and not reserved expressly to the plaintiffs.

The judgment is reversed and the case is remanded with direction to vacate the injunction and for further proceedings on the defendants' counterclaim consistent with this opinion.

In this opinion the other judges concurred.

---

that are set forth in the preceding definition of 'maintenance.' The sentence otherwise addresses only one topic: payment. It is readily apparent that the drafters intended that maintenance would be carried out by third parties that would expect to be paid for their efforts."