******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RAY WEINER, LLC, ET AL. *v.* CITY OF
BRIDGEPORT ET AL.
(AC 35288)

Gruendel, Bear and Flynn, Js.*

*Argued November 12, 2013—officially released May 20, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Bellis, J. [motion to substitute]; Hon. Richard
P. Gilardi, judge trial referee [judgment].)

*Jennifer Sills Yoxall*, with whom was *John H. Harrington*, for the appellant (plaintiff Queens Grant
Ltd. Partnership).

*John A. Pinheiro*, for the appellee (defendant Sampson Associates, LLC).

*Opinion*

FLYNN, J. The plaintiff Queen's Grant Ltd. Partnership[1] appeals from the judgment of the trial court denying its request for a declaratory judgment and injunctive relief against the defendants, the City of Bridgeport (Bridgeport), Bridgeport Economic Development Corp., and Sampson Associates, LLC (Sampson).[2] On appeal, the plaintiff claims that the court erred (1) in concluding that it could not seek a declaratory judgment against Sampson because General Statutes § 8-200 (a) does not confer aggrievement on the plaintiff as a contract purchaser under an executory contract of sale; (2) in denying it a permanent injunction enjoining Bridgeport from conveying title to a parcel of land located at 22-96 Williston Street, hereinafter referred to as the Williston Street parcel, to Sampson; and (3) in finding that Bridgeport was authorized to execute a land disposition agreement with Sampson.[3] We affirm the court's well-reasoned judgment.

The following facts and procedural history inform our review. Bridgeport adopted a master development plan (plan) pursuant to General Statutes § 8-191. At the time of the plan's adoption, a city block bounded by Crescent Avenue, Bunnell Street, Williston Street and Seaview Avenue was occupied by three separate industrial plants. One company named Magnetek, Inc. (Magnetek), occupied the westerly portion of the block adjoining Seaview Avenue. Another company, Syntex Rubber Corp., was located between the Magnetek parcel and the plaintiff's parcel. The plaintiff's land occupied the easternmost parcel on the block, which was occupied by Rotair Industries, Inc., a manufacturer of helicopter parts, in a plant bordering Bunnell Street on the east.

In March of 2009, the plaintiff signed a contract to purchase land directly across from the land it already owned on Bunnell Street. Although that Bunnell Street parcel is not the Williston Street parcel in dispute, the executory contract of sale for its conveyance is one of the bases on which the plaintiff claims to have standing. The contractual date for the conveyance of title was March 13, 2009. As of the 2012 date of trial, however, title had not passed to the plaintiff nor had the contract been rescinded. Nonetheless, it is as a contract purchaser of this parcel of land on Bunnell Street that the plaintiff claims it is entitled to challenge any change in the plan to accommodate Sampson's purchase from Bridgeport of the Williston Street parcel, which is located on the south side of Williston Street.

The Williston Street parcel, which is the former Magnetek parking lot, that Bridgeport seeks to convey to Sampson to locate a waste reduction facility formerly was zoned residential and was occupied as housing. Bridgeport demolished housing on that land to provide

employee parking for the Magnetek parcel. Magnetek since has gone out of business, and its former site was reacquired by Bridgeport, which obtained title to the land by foreclosing on its liens for back taxes. After Magnetek was divested of its property, two developers, neither of whom are parties to this action, proposed an industrial facility on the Williston Street parcel, which is the former Magnetek parking lot. This proposed use required a zoning change from residential to light industrial because the land remained zoned residential. Bridgeport Economic Development Corp. and the two developers jointly applied for the zone change, which subsequently was approved. After the zone change was approved, however, the two developers never entered a land disposition agreement with the city.

Approximately three years later, Sampson approached Bridgeport with its proposal to use the Williston Street parcel as a waste reduction facility. In February 2009, Sampson and Bridgeport entered into a land disposition agreement for the purchase and sale of that parcel. Sampson then applied to the Bridgeport Zoning Board of Appeals (board) for a variance to permit an increase in truck traffic from the permitted five trucks per day to twenty-five trucks per day. That variance was granted, and the plaintiff filed an appeal from the board's action to the Superior Court.

In an attempt to prevent the land transfer to Sampson, the plaintiff also brought the present action seeking a declaratory judgment and injunctive relief. The plaintiff's complaint sounds in four counts: (1) declaratory judgment against Sampson on the basis that its contemplated use of the Williston Street parcel is a modification and substantial change of the plan; (2) declaratory judgment against Firetree on the basis that its contemplated use of another lot located on Bunnell Street is a modification and substantial change of the plan; (3) injunctive relief enjoining Bridgeport from conveying the Williston Street parcel to Sampson; and (4) injunctive relief enjoining Bridgeport from conveying that Bunnell Street lot to Firetree. The claims against Firetree were withdrawn on June 15, 2011, and are not on appeal before this court. In its complaint, the plaintiff claimed to be aggrieved under § 8-200.

In a memorandum of decision, the court concluded that the plaintiff did not have standing under § 8-200 (a) to pursue its claim in count one for a declaratory judgment because it was not a lessee or purchaser of property subject to the plan. The court further concluded that the plaintiff was not entitled to an injunction claimed in count three because (1) it failed to show that it suffered irreparable harm, and (2) it had an adequate remedy at law in the form of its appeal from the board's decision, which it already was pursuing at the time it brought this action. This appeal followed.

I

We first consider whether the court erred in concluding that the plaintiff could not seek a declaratory judgment against Sampson because § 8-200 (a) does not confer aggrievement on it as a contract purchaser under an executory contract of sale for the Bunnell Street parcel.[4] The plaintiff contends that it is statutorily aggrieved under § 8-200 (a) as a contract purchaser of real property in the project area after the plan was adopted.[5] Specifically, it argues that, "because [the plaintiff] is a purchaser of property covered by the [plan], both the [plan] and [§ 8-200 (a)] require [Bridgeport Economic Development Corp.] to obtain [the plaintiff's] prior consent before the [plan] can be modified in a manner that will affect [the plaintiff]."[6] We disagree.

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 322, 939 A.2d 1146 (2008).

Section 8-200 (a) provides in relevant part: "A development plan may be modified at any time by the development agency, provided, if modified after the lease or sale of real property in the development project area, the modification must be consented to by the lessees or purchasers of such real property . . . affected by the proposed modification. Where the proposed modification will substantially change the development plan as previously approved, the modification must be approved in the same manner as the development plan."

In this case, it is undisputed that the plaintiff never completed the purchase of property in the area covered by the plan subsequent to its adoption. As such, it is not a purchaser under § 8-200 (a). Although the plaintiff interprets the term "purchasers" to include all property owners in the area subject to the plan, we agree with the court that these terms must be construed narrowly. Accordingly, "purchasers" means only those parties who actually have purchased specific property in the area subject to the proposed plan modification.

The parallelism in the statutory text demonstrates the flaw in the plaintiff's argument that entities under contract to purchase are purchasers under the statute. Section 8-200 (a) refers to plans modified "after the lease or sale of real property in the development project area" and mandates that such modifications must be consented to by "lessees or purchasers" of said property. Logically, "lessees" refers to those who have leased real property after a modification of the plan. Thus, "purchasers" must refer to those who have completed the sale of real property subsequent to a plan modification.[7] Accordingly, we conclude that § 8-200

(a) does not provide a basis of aggrievement to contract purchasers who have not yet completed the purchase; to be aggrieved one must own property at the time of the modification. As such, we reject the plaintiff's argument that "purchasers" includes those under contract to purchase property in the development area subject to a plan modification, and we hold that the plaintiff is not statutorily aggrieved. Therefore, it is not entitled to invoke § 8-200 (a) to bring this action.[8]

## II

Next, the plaintiff claims that the court improperly denied its request for a permanent injunction, enjoining Bridgeport from conveying title to the Williston Street parcel to Sampson. Specifically, the plaintiff claims that the court erred in concluding that it would not suffer irreparable harm if the Williston Street parcel was transferred to Sampson to be used as a waste reduction facility, and that it had an adequate remedy at law. We are unpersuaded.

"The issuance of an injunction and the scope and quantum of injunctive relief rests in the sound discretion of the [court]." (Internal quotation marks omitted.) *New Breed Logistics, Inc.* v. *CT INDY NH TT, LLC*, 129 Conn. App. 563, 570–71, 19 A.3d 1275 (2011). As such, we review a trial court's decision of whether to grant an injunction to determine "whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Welles* v. *Lichaj*, 136 Conn. App. 347, 354, 46 A.3d 246, cert. denied, 306 Conn. 904, 52 A.3d 730 (2012). "[U]nless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Citation omitted.) *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 563, 668 A.2d 367 (1995). Furthermore, to the extent that the trial court's factual findings are challenged on appeal, those findings are entitled to great deference and may be reversed by this court only if they are clearly erroneous. *Bender* v. *Bender*, 292 Conn. 696, 728, 975 A.2d 636 (2009). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) *Welles* v. *Lichaj*, supra, 136 Conn. App. 354; see also *Advest, Inc.* v. *Wachtel*, supra, 235 Conn. 562–63. "These elements are so crucial that a party's failure to allege and prove them is [a] sufficient ground for sustaining the refusal to grant an injunction . . . ." (Internal quotation marks omitted.) *Scinto* v. *Sosin*, 51 Conn. App. 222, 245, 721 A.2d 552 (1998), cert. denied,

247 Conn. 963, 724 A.2d 1125 (1999). In considering the irreparable harm element, we are guided by the principle that "[a]lthough . . . absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." (Internal quotation marks omitted.) *Silitschanu* v. *Groesbeck*, 12 Conn. App. 57, 65, 529 A.2d 732 (1987), aff'd, 208 Conn. 312, 543 A.2d 737 (1988).

The plaintiff claims that it will be irreparably harmed by increased truck traffic, decreased property value, negative impressions and blight if the Williston Street parcel is conveyed to Sampson and, as a result, the Magnetek property remains vacant.[9] Specifically, the plaintiff argues that "if an industrial facility . . . two doors down from [the plaintiff's] facility is going to remain vacant, then the effects of blight will affect [the plaintiff.]"

The court concluded that the plaintiff failed to meet its burden of proving that it would suffer irreparable harm absent the issuance of an injunction because the only evidence it offered was its own conjecture that it "suspect[ed]" an increase in traffic following the conveyance. "There was no factual evidence submitted, no surveys, studies, expert opinion or additional witnesses concerning an adverse effect of this operation. After four days of testimony of several witnesses, except for the owner of the plaintiff company, not one witness testified in opposition to the project as to any adverse effect it may have on the area." On the basis of these findings by the court, we cannot say that the court abused its wide discretion in concluding that the plaintiff has failed to establish that it would suffer irreparable harm.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] This action originally was brought by Ray Weiner, LLC (Weiner), and Queens Grant Ltd. Partnership. On June 6, 2011, Weiner was substituted as plaintiff by 480 Bunnell Street. Subsequently, although no longer a party, Weiner filed a withdrawal of its complaint on January 24, 2012. It appears that the withdrawal was construed by all parties and by the court to have been filed by 480 Bunnell Street. The only party who is a plaintiff in this appeal is Queens Grant Ltd. Partnership, which we refer to as the plaintiff in this opinion.

[2] Another entity, Firetree, Ltd., was named as a defendant in the complaint. However, all claims against it were withdrawn on June 15, 2011.

[3] Given our conclusion that the plaintiff was not statutorily aggrieved because § 8-200 (a) does not confer aggrievement on it, such that it could not seek a declaratory judgment against Sampson, we need not decide whether the court erred in finding that Bridgeport was authorized to execute a land disposition agreement with Sampson.

[4] The plaintiff brought this action in four counts, in each one of which it specifically pleaded that § 8-200 (a) had been violated in various ways. With the withdrawal of the action against Firetree only two counts remained: count one seeking declaratory relief that Sampson was in violation of § 8-200 (a), and count three seeking injunctive relief against Bridgeport from conveying the Williston Street parcel in violation of § 8-200 (a), and also because it would suffer irreparable harm. Sua sponte, we ordered supplemen-

tal briefing by the parties on the following issues:

"1. Pursuant to the allegations set forth in the plaintiff's complaint, is the plaintiff limited to General Statutes § 8-200 (a) as the sole basis for the plaintiff's standing and right to recover; and, if so,

"2. Did the plaintiff allege and prove that it was a party either to a sale occurring or lease executed after the adoption of the [plan], as § 8-200 (a) requires, sufficient to confer statutory aggrievement upon the plaintiff?"

[5] The plaintiff admitted that it was a contract purchaser, rather than an owner, of property affected by the proposed modification of the plan.

[6] The plaintiff's complaint pleads only statutory aggrievement under § 8-200 (a). Therefore, we need not consider whether it has satisfied the test for classical aggrievement.

[7] Black's Law Dictionary defines a "sale" as "[t]he *transfer* of property or title for a price." (Emphasis added.) Black's Law Dictionary (9th Ed. 2009). In its supplemental brief, the plaintiff relies on a similar definition of the word "sale" from the earlier fifth edition of Black's Law Dictionary to argue that "sale can include a contract for sale as well as the act of selling" and, thus, sale "is not limited to situations where titles passes." This reading ignores the meaning of the verb "transfer" contained in the definition of "sale" in both the fifth and ninth editions of Black's Law Dictionary. "Transfer" means "a conveyance of right, title, or interest in real or personal property from one person to another." Merriam-Webster's Collegiate Dictionary (11th Ed. 2012). Therefore, the plaintiff cannot be a party to a sale because its contract remains executory and thus no transfer has occurred.

[8] In its supplemental brief, the plaintiff raises a new argument for why it has standing to bring this action seeking declaratory relief. The plaintiff now claims, for the first time on appeal, that it has standing to challenge the modification of the plan, under our Supreme Court's decision in *AvalonBay Communities Inc.* v. *Orange*, 256 Conn. 557, 755 A.2d 284 (2001). Specifically, it cites the proposition in *AvalonBay* that a party has standing to challenge the adoption or contents of a development plan where a municipality acted in bad faith in adopting the plan. Id., 579. *AvalonBay* turned on a factual finding of the trial court that the municipality adopted a challenged plan for industrial development in bad faith in order to thwart the proposal by the plaintiff in that case to build affordable housing on the same site. Id., 576, 578. Standing on this basis was never raised before the trial court in the present case, nor was there any finding of bad faith on the part of the defendants. Accordingly, this claim is not properly before us, and we decline to consider it. See *Robert J. Barnabei Contracting, LLC* v. *Greater Hartford Jewish Community Center, Inc.*, 127 Conn. App. 507, 516, 14 A.3d 461, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011) (declining to review claim never raised before trial court because to do so "would amount to an ambuscade of the trial judge").

Additionally, the plaintiff's supplemental brief raises the argument that it has standing to invoke § 8-200 (a) because, as pleaded in paragraph two of its complaint, "its principal place of business [is] located at 964 Crescent Avenue, in the City of Bridgeport." However, § 8-200 (a) refers to "lessees or purchasers" of property, and provides that if the development plan is "modified *after* the lease or sale of real property in the development project area," the consent of such persons or entities must be obtained. (Emphasis added.) The inclusion of the word "after" in this statute suggests to us that the legislature did not intend to confer aggrievement upon entities that owned property in a development area *prior* to the plan's adoption. "Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010). The trial court concluded that "[n]one of [the] properties owned by [the plaintiff] were purchased after the . . . plan was developed." Thus, to permit the plaintiff to state a claim for declaratory relief based upon the close proximity of its principal place of business to the former Magnetek parking lot would defeat the object of the statute.

[9] At oral argument before this court, the plaintiff explained that "the harm . . . is that if . . . there's no parking for the Magnetek property the Magnetek property is likely to remain—it's currently vacant and unused and blighted."

_____