******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELIZABETH BARUNO ET AL. *v.* JOHN F.
SLANE, JR., ET AL.
(AC 35820)
(AC 35821)

Alvord, Keller and Harper, Js.

*Argued April 10—officially released July 8, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. A. William Mottolese, judge
trial referee.)

*Leon J. Greenspan*, for the appellants in AC 35820

and the appellees in AC 35821 (plaintiffs).

*Peter T. Fay*, for the appellees in AC 35820 and the appellants in AC 35821 (defendants).

*Opinion*

ALVORD, J. This legal malpractice action was brought by the plaintiffs, Elizabeth Baruno and Gerald A. Baruno, against the defendants, Attorney John F. Slane, Jr., and his law firm, Heagney, Lennon & Slane, LLP, for Slane's alleged deficient representation of the plaintiffs in an action against the plaintiffs' neighbors, Jianhua Cai Tsoi and Yvonne Chan Tsoi. The plaintiffs and the defendants now appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs. The court found the defendants liable and awarded the plaintiffs $620,817 in damages. In AC 35820, the plaintiffs claim that the court should have awarded civil contempt damages, prejudgment interest, legal fees, and costs as additional damages proximately caused by the defendants' malpractice. In AC 35821, the defendants claim that the court (1) improperly concluded that their conduct was a proximate cause of the damages awarded by the court, (2) improperly awarded damages for both the diminution in value of the plaintiffs' property and the cost to remediate it, and (3) made an improper evidentiary ruling. We conclude that the plaintiffs failed to prove that the damages awarded by the court were proximately caused by the defendants' legal malpractice, and, accordingly, we reverse the judgment of the trial court.[1]

The record reveals the following facts. As of February 1, 2006, the Tsois owned and occupied 36 Montgomery Lane in Greenwich, which is located adjacent to the plaintiffs' property at 38 Montgomery Lane. The legal description in the 2002 deed of conveyance to the Tsois identifies their property as lot 2 and parcel Y as shown on a 1984 subdivision map recorded in the office of the Greenwich town clerk as map no. 6068. The deed of conveyance further provides that the Tsoi property is subject to conditions as set forth in a warranty deed from Unique Holdings, Inc., to Carlo J. Scarpelli and Patricia B. Scarpelli dated July 6, 1984, and recorded in book 1407 at page 223 of the Greenwich land records. The conditions, inter alia, restrict the use of parcel Y by prohibiting the placement of any dwelling, outbuilding, pool, structure, driveway or any other man-made improvements on that parcel.[2]

The legal description in the 1986 deed of conveyance to the plaintiffs provides that their property, identified as lot 1 on subdivision map no. 6068, was being conveyed "[t]ogether with the right to enforce provisions and conditions set forth as Item #8 in said deed from Unique Holdings, Inc., to Carlo J. Scarpelli and Patricia B. Scarpelli dated July 6, 1984 and recorded in the Greenwich Land Records in Book 1407 at Page 223." Gerald Baruno subsequently conveyed his interest in the property to his wife, Elizabeth Baruno, in 1997.[3]

On or about February, 2006, the plaintiffs learned

that the Tsois intended to construct a new driveway on parcel Y that would serve a house to be built on the Tsoi property. The Tsois planned to tear down their current dwelling and to replace it with a larger house. The plaintiffs observed machinery that already had begun to remove trees and brush in preparation for the excavation necessary for the construction of the driveway.

The plaintiffs believed that they might have acquired some rights to parcel Y because they had dumped their leaves and grass clippings on a portion of that parcel for several years. Gerald Baruno contacted Slane and met with him on February 1, 2006, to discuss legal options for stopping the Tsois' activities. Gerald Baruno did not mention any deeded conditions or restrictions applicable to parcel Y, but he did state that he "was under the impression" that nothing could be built on parcel Y. After their discussion, Slane advised Gerald Baruno that he thought the Tsois' intended use of the property could be prevented by bringing an adverse possession claim against them.

On February 17, 2006, Slane commenced an action on behalf of Elizabeth Baruno against the Tsois in the Superior Court seeking a temporary and a permanent injunction to prevent the Tsois from entering onto a designated portion of parcel Y that the plaintiffs claimed they had acquired by adverse possession. The court denied the application for a temporary injunction, and the parties proceeded with discovery. At a deposition of Elizabeth Baruno held on March 14, 2007, Slane and the plaintiffs discovered that parcel Y was encumbered by the restrictive covenants that prohibited the Tsois' activities. The following day, Slane filed a request for leave to file an amended complaint to add a count seeking relief on the basis of the restrictive covenants applicable to parcel Y. The plaintiffs, however, decided to replace Slane as their attorney in the action against the Tsois and retained the services of Attorney Frederic Rickles, of the law firm of Gilbride, Tusa, Last & Spellane, LLC. Slane transferred the plaintiffs' file to Rickles on March 29, 2007.

Rickles filed an appearance in lieu of the defendants on behalf of Elizabeth Baruno. On June 14, 2007, he filed an amended complaint and a new application for a temporary injunction that would enjoin the Tsois from using parcel Y as a driveway or access way or in any other manner that violated the restrictive covenants applicable to that parcel. The court issued a temporary injunction on July 16, 2007, by agreement of the parties.

On May 28, 2008, the plaintiffs and the Tsois entered into a settlement agreement to resolve the litigation between them. Under the terms of the agreement, the Tsois were to pay the plaintiffs $250,000 by May 30, 2010, and were required to perform certain restorative work to parcel Y. The work requirements were set forth

in a mandatory injunction, issued that same day by the court, which ordered completion of the restorative work by August 30, 2008. The Tsois made an initial payment of $17,000, but failed to make any further payments or to perform any of the mandated restorative work. On November 28, 2008, the Tsois were found in contempt of the court's orders, and civil penalties were assessed against them. The Tsois then filed a petition for bankruptcy, which ultimately was dismissed, but the plaintiffs made no further efforts to enforce the contempt order or the agreement.

On July 7, 2008, the plaintiffs commenced the present legal malpractice action against the defendants for deficient representation in the prior action against the Tsois. In their single count, twenty-five page complaint, the plaintiffs alleged that the defendants "negligently disregard[ed] their contractual duties to the [plaintiffs], negligently ignored information presented to them as to deed restrictions and covenants, performed no such [title] search or, in the alternative, negligently performed such search and did not ascertain the existence or applicability of deed restrictions and covenants, which deed restrictions and covenants were present in the chain of title, were applicable to both the adjoining and abutting [plaintiffs'] premises and Tsoi property and which granted rights to Elizabeth [Baruno] enforceable against the Tsoi property owners and the Tsoi property—if timely and appropriately asserted." The plaintiffs further alleged that the "negligent failure [of the defendants] to assert such available deed restrictions and covenants in a timely manner resulted in the inability to obtain available injunctive relief by [the defendants] or to mount a timely application for a temporary restraining order and preliminary injunction, both of which were available and would have prevented the Tsoi property owners from continuing tortious acts . . . ." The plaintiffs sought "[c]ompensatory damages along with such other, further and different relief as to [the] court may seem just and proper; together with the costs and disbursements of this action."

During the course of a six day trial, eight witnesses testified on behalf of the parties and more than seventy-five exhibits were admitted by the court. At the conclusion of the evidence, the parties' attorneys requested the opportunity to file posttrial briefs. The court ordered the filing of simultaneous briefs and reply briefs. In the plaintiffs' posttrial brief, they argued that the evidence proved that the defendants breached the applicable standard of care and that the plaintiffs suffered damages proximately caused by that negligence. The plaintiffs requested the following itemized damages: legal fees paid to the defendants; legal fees paid to Rickles and his law firm; expert witness fees and costs; legal fees paid to Greenspan & Greenspan, the plaintiffs' counsel in this legal malpractice action; remediation and repair costs to the plaintiffs' property; dimi-

nution in value to the plaintiffs' property; the plaintiffs' "loss of enjoyment" with respect to their property; cost to restore parcel Y to its original condition; and unpaid contempt fines assessed against the Tsois.[4] The total amount claimed as damages, as of January 11, 2013, when the plaintiffs filed their posttrial brief, was $2,363,823.52.[5] The plaintiffs additionally sought prejudgment interest at 12 percent. The defendants, in their posttrial brief, argued that Slane's representation was within the applicable standard of care and that none of the plaintiffs' claimed damages were proximately caused by the defendants' alleged negligence.

On June 6, 2013, the court issued its memorandum of decision. After stating the applicable law with respect to legal malpractice and reviewing the testimony of the parties' expert witnesses, the court made the following determinations: "The court concludes that the defendant Slane departed from the applicable standard of care when he failed to examine the relevant deeds and map and base [Elizabeth Baruno's] cause of action on the violation of the restrictive covenant rather than on a theory of adverse possession. The court further concludes that, had he done so, it is more likely than not that the court would have granted equitable relief requiring that parcel Y, in so far as possible, be restored to its former condition and would have awarded compensatory damages to reflect the injury to [Elizabeth Baruno's] property rights arising from his failure to do so."[6]

Having determined that the defendants committed legal malpractice, the court then turned to the issue of damages. The court awarded the plaintiffs $620,817, which represented the diminution in value to their property, remediation costs for their property, legal fees paid to the defendants before they were replaced by other counsel,[7] legal fees to Gilbride, Tusa, Last & Spellane, LLC, and engineering costs incurred by the plaintiffs in connection with the pursuit of their contempt order against the Tsois. The court rejected the plaintiffs' claims for damages resulting from the plaintiffs' inability to benefit from and enjoy the use of their property, costs to restore the Tsois' property to its former condition, legal fees to Greenspan & Greenspan,[8] unpaid contempt fines levied against the Tsois, and prejudgment interest. These appeals followed.

We first address the defendants' claim that the court's award of damages should be reversed because the plaintiffs failed to prove that any damages were proximately caused by the defendants' legal malpractice. Because we agree with the defendants, our determination with respect to this claim is dispositive of the remaining issues in both appeals.

We begin with the applicable legal principles that govern our analysis. "Malpractice is commonly defined as the failure of one rendering professional services to

exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . . In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, 275 Conn. 748, 759, 882 A.2d 44 (2005). "[W]hen it has been established that an attorney . . . has failed to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the [legal] profession . . . [*and that conduct has*] *result*[*ed in*] *injury, loss, or damage to the* [*client*] . . . the client is entitled to a recovery against the attorney." (Citation omitted; emphasis added; internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 175, 646 A.2d 195 (1994).

"In legal malpractice actions, the plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the case-within-a-case." (Internal quotation marks omitted.) *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 775 n.9, 882 A.2d 653 (2005); *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 297, 975 A.2d 715 (2009).

Applying these principles to the present case, we begin with the unchallenged findings of the trial court that Slane was in an attorney-client relationship with the plaintiffs and that he "departed from the applicable standard of care when he failed to examine the relevant deeds and map and base [Elizabeth Baruno's] cause of action on the violation of the restrictive covenant rather than on a theory of adverse possession." Because of these findings, the plaintiffs are entitled to a recovery against the defendants if the plaintiffs established at trial that their claimed injuries were caused by that wrongful conduct and if they established the amount of those claimed damages. *Hartford Casualty Ins. Co.* v. *Farrish-LeDuc*, supra, 275 Conn. 759.

Slane commenced the action against the Tsois on February 17, 2006. The plaintiffs did not claim that the action should have been commenced before February 17, 2006, but, rather, they claimed, and the court agreed, that injunctive relief should have been sought on the basis of the restrictive covenants prohibiting the Tsois' activities on parcel Y rather than on the theory of adverse possession. According to the court, it is "more likely than not" that a court would have granted a tem-

porary injunction ordering the Tsois to halt their activities if the action properly relied on those restrictive covenants.[9]

When Rickles replaced the defendants as Elizabeth Baruno's legal counsel in the action against the Tsois, he filed on June 14, 2007, an amended complaint and a new application for a temporary injunction, claiming relief on the basis of the deeded restrictive covenants. Approximately one month later, on July 16, 2007, the court issued a temporary injunction. Accordingly, given the posture of this case and the unchallenged findings by the trial court, if the application for a temporary injunction filed by Slane on February 17, 2006, had requested equitable relief on the basis of the deeded restrictive covenants, the application "more likely than not" would have been granted by the court on or about March 19, 2006. It follows in this case, then, that in order to award the appropriate amount of damages, the court required evidence as to the injuries suffered by the plaintiffs' between March 19, 2006, the date that a temporary injunction "more likely than not" would have issued if properly pursued by the defendants, and July 16, 2007, the actual date that the temporary injunction did issue against the Tsois. There is no claim by the plaintiffs that the terms of the injunction would have been any different if it had issued on March 19, 2006, rather than on July 16, 2007.[10] The proper measure of damages would be the injuries that resulted from the Tsois' activities on parcel Y that were sustained by the plaintiffs during that sixteen month period of time.[11]

"[I]n a negligence action . . . [a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . ." (Internal quotation marks omitted.) *Gurguis* v. *Frankel*, 93 Conn. App. 162, 167, 888 A.2d 1083, cert. denied, 277 Conn. 916, 895 A.2d 789 (2006). "[A] plaintiff must establish that the defendant's conduct *legally caused* the injuries . . . ." (Emphasis added; internal quotation marks omitted.) *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 754, 87 A.3d 1134 (2014). "Cause in fact, occasionally referred to as actual cause, asks whether the defendant's conduct 'caused' the plaintiff's injury. Thus, if the plaintiff's injury would not have occurred 'but for' the defendant's conduct, then the defendant's conduct is a cause in fact of the plaintiff's injury. Conversely, if the plaintiff's injury would have occurred regardless of the defendant's conduct, then the defendant's conduct was not a cause in fact of the plaintiff's injury. . . .

"Philosophically, cause in fact is limitless; 'but for' the creation of this world, no crime or injury would ever have occurred. . . . The philosophical sense of causation includes the great number of events without which any happening would not have occurred . . . yet the effect of many of them is so insignificant that

no ordinary mind would think of them as causes. . . . Therefore, as a practical matter, limits must be established. Lines must be drawn determining how far down the causal continuum individuals will be held liable for the consequences of their actions. . . . This line is termed 'proximate cause.'

"Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff. . . . Proximate cause serves to '[temper] the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty.' . . . [Our Supreme Court] has defined proximate cause as '[a]n actual cause that is a substantial factor in the resulting harm . . . .' " (Citations omitted; emphasis omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 605–606, 662 A.2d 753 (1995).

"The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) Id., 611.

In the present case, the focus of our inquiry must center on the damage caused to the plaintiffs by the failure of the defendants to seek a temporary injunction on the basis of the deeded restrictive covenants when Slane commenced the action on February 17, 2006. The damage, contrary to the plaintiffs' argument, does not continue ad infinitum. It is important to remember that a temporary injunction against the Tsois *was* ordered by the court, albeit at a later date than it would have but for the defendants' legal malpractice. The plaintiffs argue that the defendants are responsible for the Tsois' failure to abide by the terms of the temporary injunction, the Tsois' failure to abide by the terms of the settlement agreement, the Tsois' failure to abide by the terms of the mandatory injunction, and the Tsois' failure to pay the contempt fines levied against them by the court. The circumstances of this case do not permit such a recovery. Instead, as previously discussed, the plaintiffs were entitled to the damages they could prove had occurred between March 19, 2006, the date that a temporary injunction "more likely than not" would have issued if properly pursued by the defendants, and July 16, 2007, the actual date that the temporary injunction did issue against the Tsois.[12]

Accordingly, we focus on whether the plaintiffs proved damages for that sixteen month period between March 19, 2006 and July 16, 2007. When Elizabeth Baruno's action was commenced by the defendants on February 17, 2006, the Tsois already had begun their

unlawful activities on parcel Y. This was evident from the pleadings in the second amended complaint[13] and new application for a temporary injunction filed by Rickles on June 14, 2007, as well as the testimony of Gerald Baruno at trial.[14] In its memorandum of decision, the court found that "[a]t or about February 1, 2006, the plaintiffs . . . observed machinery beginning to remove trees and brush preparatory to excavation for the construction of a driveway." There was no claim that the defendants did not file the action timely. Approximately two weeks after Slane's first meeting with Gerald Baruno, the legal proceeding had commenced. The defendants, therefore, could not be charged for whatever damages were caused by the Tsois' unlawful activities between February 1, 2006 and February 17, 2006. Moreover, a temporary injunction would not have been granted for a reasonable time thereafter, as evidenced by Rickles' efforts. Accordingly, the defendants would not be liable for damages from the Tsois' unlawful activities on parcel Y from February 1, 2006, when Slane first met with Gerald Baruno, through March 19, 2006, when a temporary injunction "more likely than not" would have been granted if the defendants had relied on the restrictive covenants in the deed as the basis for requesting the equitable relief.

The record, however, is devoid of evidence to show the status of parcel Y in mid-March, 2006. Whatever damage had occurred prior to that point in time could not be charged to any negligence of the defendants. That information is critical, however, because the defendants would be responsible for any additional damage caused by the Tsois' activities on parcel Y from mid-March, 2006 through July 16, 2007, when the temporary injunction was issued by the court. Significantly, the plaintiffs did not present evidence with respect to the unlawful activities that occurred during that particular sixteen month period or the damages that were proximately caused from those activities during that time. Instead, the evidence of damages presented by the plaintiffs related to all of the injuries they claimed to have suffered from the first intrusion of the Tsois onto parcel Y until the time of trial.[15]

In sum, the record does not disclose critical information that is necessary for a determination as to whether any damages resulted from the defendants' legal malpractice. There is no evidence as to what unlawful activities were performed by the Tsois on parcel Y during the sixteen month period between March 19, 2006 and July 16, 2007, and what damages, if any, from those unlawful activities were proximately caused by the defendants' negligence during that sixteen month period. "[I]n a negligence action . . . [a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . ." (Internal quotation

marks omitted.) *Gurguis* v. *Frankel*, supra, 93 Conn. App. 167. For these reasons, we conclude that the court's award of damages was improper.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendants.

In this opinion the other judges concurred.

[1] The plaintiffs' failure to prove that the damages awarded by the court were proximately caused by the defendants' legal malpractice is dispositive of both appeals. We therefore do not reach the plaintiffs' claims or the defendants' remaining claims.

[2] The 1984 warranty deed contains a section that enumerates various encumbrances. Item number eight in that section provides in relevant part: "This deed is given and accepted subject to the following provisions and conditions, which are imposed for the benefit of the Grantor and its successors and assigns as the owners of its retained premises on Montgomery Lane, shown as Lot No. 1 on the aforesaid [subdivision map no. 6068], and which shall bind and be enforceable against the Grantees and their heirs, executors, administrators, and assigns as the owners of Lot No. 2 and Lot No. 3 as shown on said map (since Parcel Y is being incorporated into said Lot No. 2, and said Parcel X is being incorporated into said Lot No. 3).

"No dwelling, outbuilding, pool, court, or other structure or driveway or other man-made improvements or plantings shall be placed upon either Parcel X or Parcel Y, nor shall either parcel be used for driveway or access way purposes, provided, however, that the Grantees may clear dead trees [and] shrubs and may place natural plantings upon the northerly portion of Parcel Y (as distinguished from the southerly portion of Parcel Y, which is the 20 foot wide strip running generally northeast of Montgomery Lane). The Grantor reserves the right to mow, plant and otherwise maintain the said southerly portion of Parcel Y, but shall have no obligation to do so . . . .

"The Grantee covenants and agrees that Parcel X will henceforth form a part of Lot No. 3 as shown on said map, and will not be sold or conveyed except as a portion of said Lot No. 3, and that Parcel Y will henceforth form a part of Lot No. 2 as shown on said map, and will not be sold or conveyed except as a portion of Lot No. 2.

"These provisions shall run with the land in perpetuity, and shall be enforceable by the Grantor, its successors and assigns as the owners of Lot No. 1 as shown on said map; and the Grantor, its successors and assigns shall have the right to maintain an action at law or in equity to enjoin or remove any proscribed activity or structure within said Parcel X and/or Parcel Y; and the legal fees and other expenses associated with enforcing these restrictions shall be borne and paid by the Grantees, their heirs, administrators, executors and assigns as the owner or owners of the restricted Parcels X and Y, or either of them with respect to which enforcement is sought."

[3] Although Elizabeth Baruno was the sole owner of 38 Montgomery Lane as of 1997, the present malpractice action was brought and prosecuted against the defendants by both plaintiffs. Accordingly, references in this opinion generally are to both plaintiffs, and we refer to a particular plaintiff only when necessary for clarification as to the facts and procedural history.

[4] The Tsois were ordered to pay $500 per day, beginning on December 31, 2008, for each day that they were not in compliance with the court's order issued on November 28, 2008. As of December 1, 2012, the unpaid fines were approximately $730,000.

[5] The plaintiffs' theory of damages, as argued before the trial court and this court, was characterized by the plaintiffs' counsel as "the 'Dr. Quack' principle." According to the plaintiffs, "[l]egally and logically, a malpracticing attorney is responsible for all damages that are proximately caused by his negligence—regardless of whether they occurred during or after the period of representation. . . . If a negligent tortfeasor causes damage to an innocent plaintiff who by reason thereof is the victim of medical malpractice by a treating physician, the negligent tortfeasor is liable therefor. If Dr. Quack cuts off the plaintiff's leg while performing surgery on the arm, the original tortfeasor who injured the plaintiff's arm is liable. . . . In order to assess the damages incurred by the [plaintiffs], the trial court properly considered the full extent of the damages caused by Slane even though they continued to manifest beyond his representation of the [plaintiffs]." (Citations omitted.)

Under "the 'Dr. Quack' principle," the plaintiffs claim that they are entitled to any and all damages they suffered and continue to suffer as a result of the Tsois' activities. The plaintiffs maintain that such damages would include the unpaid contempt fees levied against the Tsois, which continue to accrue at a rate of $500 per day.

[6] The defendants have not challenged the court's determination as to liability in this appeal.

[7] The original complaint filed by Slane sought injunctive relief on the ground of adverse possession. The amended complaint filed by Rickles sought injunctive relief on the grounds of adverse possession and the deeded restrictive covenants applicable to parcel Y. Rickles simply added an additional basis upon which the plaintiffs sought injunctive relief. The work performed by Slane, therefore, was adopted and pursued by Rickles when he replaced Slane.

[8] The issue of the recoverability of attorney's fees for services rendered by Greenspan & Greenspan was deferred pending the court's adjudication as to liability. Following the issuance of the court's June 6, 2013 memorandum of decision, the parties filed supplemental briefs that addressed that issue. On July 16, 2013, the court issued a supplemental memorandum of decision in which it denied Greenspan & Greenspan's request for attorney's fees.

[9] In the plaintiffs' posttrial brief, they claimed that a court would have been required to issue an injunction if the initial complaint had sought equitable relief on the basis of the restrictive covenants in the Tsois' deed. The plaintiffs, maintaining that the deeded restrictive covenants were contractual in nature, made the following arguments: (1) "Had Slane apprehended the language in the deed and pertinent maps, he would have known that an action for adverse possession was barred. Slane would have known to apply to the court for contractual injunctive relief based upon the restrictive covenant as opposed to equitable relief which sets a higher bar than the deed authorized, contractual injunctive relief—*a remedy not dependent upon judicial discretion*" (emphasis added); (2) "[c]ontractually, injunction was mandated"; and (3) "[h]ad Slane promptly made the contractual injunction application authorized by the restrictive covenant, the court *would have been obligated to grant the same.*" (Emphasis added.)

The plaintiffs' claim finds no support in our appellate case law. "The issuance of an injunction and the scope and quantum of injunctive relief *rests in the sound discretion of the trier.*" (Emphasis added; internal quotation marks omitted.) *Welles* v. *Lichaj*, 136 Conn. App. 347, 354, 46 A.3d 246, cert. denied, 306 Conn. 904, 52 A.3d 730 (2012). This is true even when irreparable harm and lack of an adequate remedy at law are not prerequisites to the granting of an injunction. For example, when a zoning enforcement officer seeks to enjoin a violation of the town's zoning regulations pursuant to General Statutes § 8-12, it is not necessary for that public official to prove irreparable harm to the town and lack of an adequate legal remedy. *Johnson* v. *Murzyn*, 1 Conn. App. 176, 177, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). Nevertheless, "the granting of injunctive relief, which must be compatible with the equities of the case, *rests within the trial court's sound discretion.* . . . Those equities should take into account the gravity and wilfulness of the violation, as well as the potential harm to the defendants." (Citation omitted; emphasis added.) Id., 183.

[10] Although the plaintiffs claimed that the building of the new house on the Tsoi property caused injury to the plaintiffs' property, the temporary injunction that was granted on July 16, 2007, did not prohibit activities on lot 2 of the Tsoi property. The restrictive covenants were applicable to parcel Y of the Tsoi property only. There was testimony by Rickles that the front steps of the newly constructed dwelling were located on parcel Y. The remainder of the new Tsoi dwelling would have been located on lot 2, which was not burdened by the restrictive covenants. Consequently, any damages sustained by the construction of the new Tsoi dwelling on lot 2 could not have been proximately caused by the defendants' failure to secure a temporary injunction by March 19, 2006.

[11] The record reveals that the hearing on the application for a temporary injunction filed by Slane was held on April 24, 2006. That request for injunctive relief, based on the claim of adverse possession, was denied by the court. It could be argued that had Slane initially sought equitable relief on the basis of the deeded restrictive covenants, the court "more likely than not" would have granted the application at the time of that hearing on April 24, 2006. In that event, the damages would be calculated for the fifteen month period between April 24, 2006 and July 16, 2007.

[12] We note that the Tsois did not stop their unlawful activities on parcel Y when Elizabeth Baruno commenced the action against them in February, 2006, or when the court issued a temporary injunction by agreement of the parties in July, 2007. Moreover, the Tsois did not abide by the terms of the settlement agreement, entered as an order by the court in May, 2008, nor did they abide by the terms of the mandatory injunction that the court issued that same day. Furthermore, when contempt fines were levied by the court against the Tsois for their wilful violation of court orders, the Tsois failed to pay the fines. In sum, the Tsois were not deterred by any legal attempts to stop their unlawful activities and have not complied with any of the court injunctions and orders that have been issued. There is nothing in the record to suggest that the Tsois would have obeyed the terms of a temporary injunction if it had issued sixteen weeks earlier than the one that did issue on July 16, 2007.

[13] The second amended complaint alleged: (1) "On or about February, 2006, and until the present time, the [Tsois] have constructed and continue to maintain a driveway on property designated as parcel Y on said map no. 6068 in violation of the provisions and conditions in the [1984] deed"; (2) "[b]y constructing and maintaining the driveway and destroying the stonewall and vegetation located thereon, the [Tsois] are in violation of the restrictive covenant, conditions and provisions" in the 1984 deed; and (3) "[p]rior to installing the illegal driveway, [the Tsois] removed trees and other plantings from parcel Y . . . ."

[14] Gerald Baruno, during cross-examination at trial, acknowledged that he had testified at a deposition that the Tsois had "cut down trees and started doing work prior to February 13 [2006]."

[15] For example, the diminution in value of the plaintiffs' property was calculated as of 2011-2012. Also, there was testimony as to the Tsois' construction of a five foot wall along the driveway sometime during the latter part of 2007 or 2008.

The plaintiffs argue in their appellate brief: "Because the breach of the restrictive covenant and the damages to the [plaintiffs] continued into 2012, it was appropriate to measure the damages as they existed in 2012." We disagree.